# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 9, 2015        Decided May 31, 2016

No. 14-5047

JANEAN E. CHAMBERS,
APPELLANT

v.

SYLVIA MATHEWS BURWELL,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00544)

———

*Ellen K. Renaud* argued the cause for appellant. With her on the briefs were *David H. Shapiro* and *Richard L. Swick.*

*Alexander D. Shoaibi*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Janean Chambers alleges that she was denied a promotion at the Department of Health and Human Services because of her race and disability. The district court entered summary judgment against her, and we affirm.

I

Janean Chambers is a legally blind, African-American woman who has worked for HHS since 1989. In 2006, HHS promoted Chambers to be a Management Analyst in the Office of Information Services (OIS) at a GS-9 pay grade. In this position, Chambers coordinated disability accommodations for employees in HHS's Administration for Children and Families (ACF). Each operating division of HHS has someone like Chambers who is responsible for coordinating the disability accommodations required under Section 508 of the Rehabilitation Act.

Chambers became eligible to apply for GS-11 positions in 2007. Because she preferred to continue as ACF's Section 508 Coordinator at that higher grade, she requested a promotion from her second level supervisor, the Director of OIS, Michael Curtis. Curtis, however, told Chambers that he could not promote her to the GS-11 pay grade in her current position because HHS had capped that job at the GS-9 level. As a result, the agency's formal personnel policies gave Chambers only two vehicles for promotion: (1) she could apply for an available GS-11 position in the agency (including Section 508 Coordinator positions in other divisions), or (2) she could request a favorable "desk audit" to demonstrate her current duties warranted a higher pay grade. A desk audit allows an employee to have her duties independently reviewed by a human resources specialist. If the audit reveals

her responsibilities are at a higher level than her position is graded, she is promoted to the higher level.

Chambers neither applied for an available GS-11 position nor asked for a desk audit. Instead, over the next four years, she pursued an informal method of promotion at the agency: the creation of a higher-graded vacancy with the same responsibilities as her current job. Curtis, for his part, told Chambers that he supported such a promotion. He explained, however, that he lacked the authority to create a new position—that could only be done by his superiors. Curtis promised Chambers that he would ask those superiors to create such a position.

When no vacancy was created, Chambers met with her immediate supervisor and Curtis in October 2011 to discuss her frustration. At the meeting, Curtis told Chambers that he had asked the current Deputy Assistant Secretary, Jason Donaldson, to create a GS-11 position but that Donaldson had refused to do so, citing budgetary constraints. In an email she sent summarizing the meeting, Chambers acknowledged that Curtis could only urge the agency to create a vacancy for which she could apply. Chambers also reported that Curtis had "indicated that [supportive] paper work was submitted to the front office" in an effort to secure her an "opportunity for advancement," but "was denied due to the lack of budget." Finally, Chambers requested that Curtis or her supervisor correct anything in her summary that she had misinterpreted. Neither ever replied.

That same month, Chambers filed a complaint with the equal employment opportunity office at HHS alleging that she had been denied a promotion in October 2011 because of her race and disability. Chambers claimed that at the same time

that she had been told HHS lacked the funds to create her desired position, the agency had created positions to promote three white, sighted department heads from a GS-14 to a GS-15 pay grade and had created a new GS-14 network security position. She also asserted that the other Section 508 Coordinators elsewhere in HHS were paid at a higher grade than she was, despite serving smaller divisions. In an attempt to resolve the claim, the parties agreed to an expedited desk audit to determine whether Chambers's responsibilities warranted a higher grade. The audit concluded that Chambers's job was properly classified at the GS-9 level.

Chambers then filed suit in district court. She alleged that she was not promoted to a GS-11 level because of her race and disability in violation of Title VII and the Rehabilitation Act. The district court granted summary judgment to HHS, reasoning that an employee could not suffer a cognizable adverse employment action when the position she sought did not exist and when her supervisor lacked the authority to create it. Chambers timely appealed.

We have jurisdiction under 28 U.S.C. § 1291 to review the district court's grant of summary judgment. Our review is de novo, and we may affirm the district court on any ground supported by the record. *Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir. 2007). We view the evidence in the light most favorable to Chambers, draw all reasonable inferences in her favor, and avoid weighing the evidence or making credibility determinations. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).

5

II

The district court was right that Chambers must show that she suffered a cognizable adverse employment action to prevail under Title VII and the Rehabilitation Act. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Chambers attempts to meet this burden by arguing that Curtis failed to ask his superiors to create a new GS-11 Section 508 Coordinator position. This failure, in her view, amounted to the denial of a promotion. The government agrees that the denial of a promotion is an adverse employment action. But the government argues a denial of promotion is only cognizable as an adverse employment action if a vacancy for the desired position already exists. The district court agreed and on that basis ruled against Chambers. But there is no such categorical rule in our case law. Instead, we affirm the district court's grant of summary judgment to HHS on a different ground: Chambers did not produce evidence from which a reasonable juror could find that she was denied the promotion because of her race or disability.

A

Title VII and the Rehabilitation Act forbid federal employers from discriminating on the basis of race, 42 U.S.C. § 2000e-16(a), or disability, 29 U.S.C. § 794(a). To survive summary judgment, a plaintiff must introduce sufficient evidence for a reasonable jury to find that she suffered a "materially adverse" employment action. *See Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003). This is not an onerous burden for claimants who allege the denial of a promotion. Often, the plaintiff satisfies this requirement by showing that she applied for, and was rejected from, an available—*i.e.*, vacant—position.

But Chambers alleges a different kind of adverse employment action. She claims that she suffered a denial of promotion when her supervisor failed to request the creation of a new position to aid her promotion. According to Chambers, HHS routinely created new positions to promote employees similarly situated to her based on the recommendations of supervisors. Her supervisor's failure to even make such a request, she argues, deprived her of a similar opportunity for advancement. Chambers makes no attempt to argue that she was denied promotion to a vacant position; indeed, she readily concedes that no available position ever existed.

The government argues that the lack of a vacancy dooms her claim. We disagree. We have recognized that claims alleging an unlawful denial of promotion come in at least two forms: the denial of a promotion to a vacant position and the denial of an increase in pay or grade. *See Cones v. Shalala*, 199 F.3d 512, 516-17 (D.C. Cir. 2000). The government's argument recognizes the former, but overlooks the latter. Precedent makes clear that employees who pursue, and are denied, pay or grade increases can still suffer a materially adverse employment action. *See id.* at 517; *see also Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981). Chambers advances this type of claim, and she did not need to identify an available vacancy to survive summary judgment.

This approach avoids creating an unacceptable loophole in our antidiscrimination law. A categorical rule requiring employees to *always* identify a vacancy before advancing their denial of promotion claim would permit employers to systematically pass over qualified candidates because of their race or disability. An agency, for example, could limit formal promotional opportunities while allowing supervisors to

promote subordinates by requesting the creation of vacancies tailored to their particular qualifications. In such a system, a supervisor could request vacancies only for white subordinates because of his animus toward African-Americans, and thereby prevent African-American employees from receiving promotions because of their race. Allowing employers to escape liability for this kind of unlawful workplace conduct would exalt form over substance by ignoring the reality that employers promote employees in a variety of ways—both formal and informal. Courts have long avoided such anomalous results in the employment discrimination context by tailoring the evidence needed to survive summary judgment to the particular circumstances of the plaintiff's claim. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973); *see also* BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 2-4 (5th ed. 2012).

We follow that lead here. As a matter of law, at least where a manager regularly requests and receives upgraded vacancies that are earmarked for his subordinates, his decision not to engage in that process because of an employee's disability or race can be an adverse employment action under our case law.

B

We nevertheless conclude that Chambers's claim suffers from a fatal defect: Chambers did not show that she was denied her promotion because of her race or disability. This showing is an essential element of her employment discrimination claim. *Baloch*, 550 F.3d at 1196. Evidence that is "merely colorable" or "not significantly probative" is insufficient to establish this element of her claim at summary

judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Chambers instead needed to produce evidence from which a reasonable juror could conclude that the agency failed to promote her because of her race or disability. *See id.* at 249 (stating that to survive summary judgment, a party must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). She failed to do so.

The core of Chambers's claim that she was the victim of unlawful discrimination is her allegation that Curtis did not request the creation of a GS-11 position from his superiors. In other words, Chambers relies on *Curtis's* allegedly discriminatory conduct as the cause of the agency's failure to create the position she desired. But no reasonable juror could find from this record that Curtis contributed to the agency's inaction.

In fact, the record supplies ample evidence that Curtis made the request for the GS-11 position that Chambers desired. Curtis testified that he asked Donaldson to create the position. Donaldson confirmed that Curtis did in fact request the administrative support position. Substantial evidence in the record also confirms that Curtis supported Chambers's career development. He consistently gave her high performance ratings, expressed his desire to see her promoted, approved training to increase her promotional opportunities, and encouraged her to pursue a desk audit or other promotional possibilities. And, during her time at ACF, Chambers received twice as many promotions as other employees under Curtis.

Chambers provides no probative evidence in response. To the contrary, any evidence that Chambers offers to

demonstrate that Curtis failed to make her desired request is "merely colorable." *See Anderson*, 477 U.S. at 249. She first contends that a reasonable juror could conclude that Curtis lied when he said that he asked for a new position, because he gave conflicting reasons for why his request was denied. Initially, he told Chambers the reason was budgetary. Later, he cited management's preference for other personnel goals. But there is no tension between these explanations. Often an agency lacks funding for one activity because it prioritizes other agency goals. Indeed, as Donaldson's account confirms, when Curtis made the request for the administrative support position, "[r]esources became much more constrained" and he considered other personnel goals critical to the agency's needs.

Chambers also claims that a reasonable jury could conclude that Curtis never sought her desired position because HHS never produced any paperwork indicating a request was made. The record is by no means clear that paperwork was required for Curtis to request a new position. But, even if we assume that paperwork was required, the district court found that Chambers never sought such paperwork in discovery; and no such discovery request is in the record—a point Chambers's counsel conceded at oral argument. *See* Oral Arg. at 5:30-6:10. No reasonable juror could conclude that Curtis lied merely because the agency did not produce a document that Chambers never requested. Speculation about whether such paperwork existed and what inferences could be drawn from its absence cannot meet Chambers's burden at summary judgment.

Chambers next points to HHS's creation of a new GS-11 Section 508 Coordinator position for ACF in 2012, after the start of this litigation. Chambers was the only applicant for

the position and Curtis selected her for the slot. According to Chambers, a reasonable juror could infer from this that Curtis failed to ask for her position earlier. But the record contains no probative evidence about who created this position, much less why. It is thus mere speculation that Donaldson decided to create the position based on a belated request by Curtis as opposed to a change in budgetary constraints or other wholly benign circumstances.

Chambers also failed to offer evidence that HHS ever granted *any* supervisory requests like the one she asked Curtis to make—evidence that might have supported an inference that the agency's failure to create the position earlier was a result of Curtis's failure to make the request. In fact, she produces no evidence that Curtis secured such a vacancy for anyone similarly situated to her, while allegedly denying her the same opportunity. While she does point to three promotions that may have occurred through HHS's creation of tailor-made vacancies, the record shows that Curtis's superiors exercised their own initiative in creating these GS-15 positions for department heads under their supervision. There is no evidence that a supervisor like Curtis, who lacked the ability to create new positions, played any role in requesting the creation of these positions. As such, there is no basis, beyond mere conjecture, from which a juror could conclude that any delay in securing the new GS-11 position that Chambers desired was caused by Curtis's discriminatory failure to seek the position earlier.

Finally, a reasonable juror could not conclude from this record that *Donaldson* denied the request for the GS-11 position because of Chambers's race or disability. Chambers acknowledges that Donaldson did not know that Curtis was asking for the GS-11 position as a promotional opportunity

for Chambers. Donaldson could not then have denied the request in order to discriminate against Chambers because he had no idea who Curtis sought to put in that position. As a result, we have no need to further probe the budgetary reason that Donaldson gave for his initial denial of the request. Nor must we resolve whether Donaldson's budget explanation is believable in light of his decision to create other new positions at the same time. Whatever the reason for Donaldson's denial, it could not have been based on discrimination if, as Chambers recognizes, he was not aware that the requested position was designed to facilitate Chambers's promotion.

## III

Chambers's failure to offer colorable evidence that she was denied her promotion because of her race or disability is fatal to her case. We affirm the district court's grant of summary judgment to HHS.