# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 26, 2016        Decided June 9, 2017

No. 14-5285

LAWRENCE NISKEY,
APPELLANT

v.

JOHN F. KELLY, U.S. DEPARTMENT OF HOMELAND SECURITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01269)

———

*Matt Rosenthal*, Student Counsel, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *Thomas Burch*, appointed by the court, *Aaron Parks* and *Rachel Zisek*, Student Counsel.

*Lawrence Niskey*, *pro se*, filed the briefs for appellant.

*John C. Truong*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *R. Craig Lawrence* and *Peter R. Maier*, Assistant U.S. Attorneys.

Before: MILLETT and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Before federal employees can bring a claim of employment discrimination to court, they must first present the claim to their employing agency so that the agency can attempt to resolve the matter internally. While Lawrence Niskey initiated this administrative exhaustion process for his claims of race discrimination and retaliation, he did not see it through to the end. Accordingly, we hold that the district court properly dismissed his claims against the Department of Homeland Security for failure to exhaust his administrative remedies.

**I**

Lawrence Niskey is an African American male who was employed by the Department of Defense as an Information Technology Specialist, a job that involved classified material. According to the allegations in his district court complaint, in April 2002, Niskey noticed that his supervisors were not granting leave to employees evenhandedly. After Niskey complained about this problem to his supervisors, John O'Connor and Fred Herr, his work came under increased scrutiny, and he was warned by other employees that trouble was headed his way. Then, on the morning of September 11, 2002, Niskey spoke to Carl Law—his next-in-line supervisor—to request three to four hours of emergency leave because he thought his car had been stolen. Law denied Niskey's leave request and told Niskey that he would be considered absent without leave. After Niskey obtained a replacement vehicle, he called a different supervisor—John O'Connor—to report that he was coming into work. But O'Connor told Niskey to stay home for the rest of the day.

The next day, Niskey's access to classified information was suspended, and Niskey himself was suspended from his job, albeit with pay. That same day, Niskey contacted Defense Department Equal Employment Opportunity Counselor Allison Stafford to complain that his security clearance suspension was based on discriminatory animus and retaliation for his previous complaints to his supervisors about inequalities in the leave-approval process. According to Niskey, Stafford told him not to file a formal discrimination or retaliation complaint until the agency took final action on his security clearance.

On October 28, 2002, Niskey was suspended without pay. A letter notifying Niskey of the suspension also informed him that if he felt that the decision was made for discriminatory reasons, he should contact the Equal Employment and Cultural Diversity Office at the Department of Defense. On an unspecified date in October 2002, Niskey sent a letter instead to the headquarters of the United States Equal Employment Opportunity Commission complaining about the Defense Department's discrimination and retaliation. Niskey never received a response to that letter.

In 2003, Niskey's job, as well as his equal employment opportunity complaints to Stafford, were transferred from the Department of Defense to the Department of Homeland Security, along with his personnel files. For nearly three years, no action was taken by the agency on Niskey's security clearance suspension or his discrimination and retaliation claims.

On March 30, 2006, Niskey's security clearance was permanently revoked. Niskey filed an appeal of the revocation with officials in the Department of Homeland Security charged with handling security-clearance disputes and requested a

formal hearing. In November 2006, Niskey, now represented by counsel, sent a formal request to appear at the hearing.

That hearing was scheduled for April 25, 2007. However, the day before the hearing, Niskey's attorney informed him that she would no longer represent him. Because Niskey was unable to obtain information about the location or time of the hearing, he did not appear. On May 11, 2007, the Chief Security Officer affirmed the revocation of Niskey's security clearance.

As a result of the security clearance revocation, the Department notified Niskey of his proposed removal on August 10, 2007. Although Niskey protested the decision, he was notified on September 4, 2007, that the decision to remove him had been finalized. That notice also advised Niskey to contact the Department's equal employment opportunity office if he believed that the removal was the result of discrimination. Niskey then sent a letter challenging his removal to an Attorney-Advisor for Labor and Employment in the Department's Office of General Counsel. Niskey's removal became effective on September 12, 2007.

With the aid of new counsel, on October 12, 2007, Niskey appealed his termination to the Merit Systems Protection Board. However, Niskey's appeal documents and hearing testimony before the Board's administrative law judge ("ALJ") made no mention of racial discrimination or retaliation, focusing instead on alleged procedural errors in the security revocation and termination process. A Board ALJ affirmed Niskey's termination, finding no material error in the procedures that led to his security clearance revocation or his removal.

Niskey filed *pro se* a petition for review of the ALJ's decision with the Board. In his petition for review, Niskey alleged that race discrimination played a part in his initial temporary suspension for being "absent without leave," which led to his security clearance suspension and, ultimately, to his termination. The Board affirmed the decision of the ALJ, ruling that Niskey did not present any new or previously unavailable evidence, and did not demonstrate that the ALJ committed any material legal error. The Board issued its final decision on July 9, 2008.

Over a year later, in November 2009, Niskey contacted the Equal Employment Opportunity Commission's Washington Field Office about his termination, and was advised to file a formal complaint with the Department of Homeland Security's Equal Employment Opportunity ("EEO") office. Niskey claims that he was told that his time limit for filing his complaint would be equitably tolled. In August 2010, Niskey contacted a counselor in the Department's EEO office, and in September 2010, Niskey filed a formal complaint with that office. The complaint alleged that race discrimination and retaliation stemming from the 2002 discriminatory leave policy led to the suspension of his security clearance and his eventual termination.

The Department's EEO office found that Niskey had failed to initiate contact with a Department EEO counselor within 45 days of the unlawful termination or other discriminatory act, as required by regulation. Niskey appealed to the Equal Employment Opportunity Commission, which affirmed the Department's decision.

On August 20, 2013, Niskey filed suit under Title VII, 42 U.S.C. § 2000e-2, in the United States District Court for the District of Columbia, again asserting that race discrimination

and retaliation led to his termination.  The district court subsequently dismissed Niskey's complaint for failure to exhaust his administrative remedies.  *See Niskey v. Johnson*, 69 F. Supp. 3d 270, 271 (D.D.C. 2014).  The district court concluded that Niskey failed to seek timely administrative review of his final security clearance revocation, and continued for years thereafter to allow fatal time gaps in his exhaustion efforts.  *Id.* at 273–275.

**II**

We review *de novo* the district court's dismissal of the complaint for failure to state a claim.  *See Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015).  In doing so, we assume the truth of the complaint's factual allegations and all reasonable inferences to be drawn from them.  *See*, *e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008).

**A**

Title VII broadly prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  That protection extends to employees of federal agencies, including the Departments of Defense and Homeland Security.  *Id.* § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment * * * in executive agencies as defined in section 105 of Title 5 * * * shall be made free from any discrimination based on race, color, religion, sex, or national origin."); *see generally Gomez-Perez v. Potter*, 553 U.S. 474, 487 (2008).

While Title VII's protection against discrimination is quite straightforward, the process for enforcing that right is

labyrinthine. Federal employees, most of whom are proceeding on their own without legal counsel, have to navigate a maze of administrative processes before they can bring a claim to federal court. *See generally* 42 U.S.C. § 2000e-16(c).

First, if subjected to discriminatory action, the federal employee must within 45 days contact a counselor in the employing agency's equal employment opportunity office. 29 C.F.R. § 1614.105(a)(1). At that initial meeting, the EEO counselor is required to provide the employee with a written document that outlines his rights and responsibilities in the employing agency's EEO process. *Id.* § 1614.105(b)(1). The counselor is supposed to investigate the claim and, within 30 days of that initial meeting, conduct a final interview with the employee. *Id.* § 1614.105(d). If the issue has not been resolved by the time of the final interview, the EEO counselor is required to provide the employee with a written document informing him that he has the right to file a formal discrimination complaint with the employing agency. *Id.* The counselor is prohibited from "attempt[ing] in any way to restrain the [employee] from filing a complaint." *Id.* § 1614.105(g).

After receipt of that written notice, the employee has fifteen days to file a formal complaint with his employing agency. 29 C.F.R. § 1614.106(b). The agency then has 180 days to complete its investigation of the complaint and to attempt to resolve it. *See id.* § 1614.108(e).

At this juncture, the employee's procedural path forward divides depending on whether the employing agency decides the claim or fails to act within the designated 180-day timeframe.

Option 1: If the employing agency issues a decision with which the employee is dissatisfied, the employee can file suit in federal court, 29 C.F.R. § 1614.407(a), or appeal to an Equal Employment Opportunity Commission ("EEOC") ALJ, who has 180 days to render a decision, *id.* § 1614.109(i). The EEOC ALJ's decision binds the agency if the agency either accepts the decision or fails to object to it within 40 days. *Id.* §§ 1614.109(i), 1614.110(a).

Once there is a final EEOC ALJ decision, the employee may either go directly to court within 90 days, or may first appeal within 30 days to the full Equal Employment Opportunity Commission. 29 C.F.R. §§ 1614.407(a), 1614.402(a). If the employee elects to appeal to the EEOC, he will have 90 days after the EEOC's final decision to bring his claims to federal district court. *Id.* § 1614.407(c). If the Commission fails to act within 180 days of the filing of an appeal, the employee may also bring his case to federal court at that time, *id.* § 1614.407(d), or may choose just to wait for the EEOC's decision.

Option 2: If the employing agency has failed to issue a decision within the 180-day time period, the employee can request an immediate final decision from the agency. 29 C.F.R. §§ 1614.108(f), 1614.110(b). That decision must be issued within 60 days of the employee's request. *Id.* § 1614.110(b). Once the agency decides, the employee has the same options for filing suit in federal district court or proceeding before the EEOC outlined in Option 1.

As an alternative to demanding an immediate agency decision, an employee confronted with tardy decisionmaking by the employing agency can request a hearing before an EEOC ALJ, just as he could have done if a timely decision had issued. Or he can forgo obtaining an agency decision

altogether and proceed directly to federal district court. 29 C.F.R. §§ 1614.407(b), 1614.106(e)(2). If the employee chooses to pursue an EEOC ALJ hearing, the matter proceeds along the track described in Option 1.

But wait—there is more: Niskey claims that he was pressing what is known as a "mixed case"—a case in which the asserted claim (or claims) both arises under a federal employment discrimination law (such as Title VII) and also relates to or stems from an action that is within the jurisdiction of the Merit Systems Protection Board ("Board") (here, Niskey's challenge to the revocation of his security clearance and his resultant removal). *See* 5 U.S.C. § 7702; *see also* 29 C.F.R. § 1614.302(a) (defining "mixed case complaints" and "mixed case appeals"); *Kloeckner v. Solis*, 133 S. Ct. 596, 600 (2012) ("A federal employee subjected to an adverse personnel action such as a discharge or demotion may appeal her agency's decision to the Merit Systems Protection Board[.] * * * In that challenge, the employee may claim, among other things, that the agency discriminated against her in violation of a federal statute."). Such cases are deemed "mixed" because unlike employment discrimination claims, which can eventually proceed to federal district court, claims alleging only violations of civil service rules must be litigated before the Board, and appealed from there to the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703; *see generally Kloeckner*, 133 S. Ct. at 600–607.

The long and the short of all this is that a federal employee complaining that an adverse action was taken against him for discriminatory reasons has yet another available administrative avenue through which to pursue his claim. Specifically, the employee can forgo the internal agency exhaustion process and take his claim directly to the Board. *See* 5 U.S.C. § 7702; 5 C.F.R. §§ 1201.154, 1614.302(a)(2), (b); *Kloeckner*, 133 S. Ct.

at 601. Alternatively, the employee may file a mixed case complaint with the agency and then appeal to the Board after the agency disposes of (or fails to timely act on) the mixed-case complaint. *See* 5 U.S.C. § 7702; 5 C.F.R. § 1201.154; 29 C.F.R. § 1614.302(a), (b), (d). If the Board upholds the agency action, the employee may press the complaint before the EEOC or may seek judicial review. *See* 5 U.S.C. §§ 7702, 7703(b); *see also* 5 C.F.R. §§ 1201.120, 1201.175; 29 C.F.R. § 1614.303(a).

**B**

Congress required federal employees to exhaust discrimination claims "to give federal agencies an opportunity to handle matters internally whenever possible," and to impose on employing agencies "the opportunity as well as the responsibility to right any wrong that it might have done." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (quoting *President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980)); *see also id.* (exhaustion "ensure[s] that the federal courts are burdened only when reasonably necessary").

Unfortunately, as the Supreme Court has understated, "the intersection of federal civil rights statutes and civil service law has produced a complicated, at times confusing, process for resolving claims of discrimination in the federal workplace." *Kloeckner*, 133 S. Ct. at 603. Yet if an employee fails to meet any of those statutory or regulatory deadlines, the employee's federal court action may be dismissed for failure to administratively exhaust the claim. *See*, *e.g.*, *Hernandez v. Pritzker*, 741 F.3d 129, 134 (D.C. Cir. 2013).

Because administrative exhaustion requirements are not jurisdictional, however, an employee who missteps in the process may avoid dismissal if he qualifies for equitable relief

from the deadline by demonstrating good cause for the procedural failure. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *see also Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015). An employee is entitled to equitable tolling if he demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## III

Niskey alleges that he was first discriminated against on the basis of his race and retaliated against for challenging racial discrimination when his supervisors denied him leave in 2002. But Niskey did not file a formal complaint with the Department of Homeland Security's EEO office until 2010. That is a yawning time gap for Niskey to bridge. While timely exhaustion steps and equitable tolling get Niskey part of the way there, they do not bring him home.

## A

To start, Niskey timely made initial contact with the EEO Counselor of his predecessor employer, the Defense Department, within 45 days of both his security clearance suspension and his suspension from employment with pay.

The district court refused to credit that initiation of the informal EEO process, reasoning that the mere suspension of a security clearance and suspension from work with pay are not

sufficiently adverse personnel actions to support triggering the EEO process. *See Niskey*, 69 F. Supp. 3d at 273. That was error because a security clearance was necessary to perform Niskey's job, and so the suspension resulted in a complete inability to perform all of his job responsibilities.

The prohibition on discrimination applies to "materially adverse" employment actions. *See, e.g.*, *Chambers v. Burwell*, 824 F.3d 141, 144 (D.C. Cir. 2016). Actions are "materially adverse" if they affect the "terms, conditions, or privileges of employment or future employment opportunities" in such a way that a reasonable trier of fact could find "objectively tangible harm." *Czekalski v. LaHood*, 589 F.3d 449, 454 (D.C. Cir. 2009) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).

Prohibited discrimination, in other words, is not rigidly confined to "hirings, firings, promotions, or other discrete incidents." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006); *see Forkkio*, 306 F.3d at 1130 ("Actions short of an outright firing can be adverse within the meaning of Title VII, but not all lesser actions by employers count."). Instead, when "objectively tangible harm" results, actionable employment actions can include such events as (i) an unchanged performance rating if the employee claims that he was discriminatorily denied an improved performance rating, *see Walker v. Johnson*, 798 F.3d 1085, 1095 (D.C. Cir. 2015); (ii) a law enforcement agency's discriminatory refusal to investigate a death threat made against its agent by a federal prison inmate, *Rochon v. Gonzales*, 438 F.3d 1211, 1219–1220 (D.C. Cir. 2006); and (iii) an agency's discriminatory denial of a bonus or payment of a reduced bonus, *Russell v. Principi*, 257 F.3d 815, 818–820 (D.C. Cir. 2001).

Under the circumstances of this case, a reasonable trier of fact could find that the suspension of Niskey's security clearance, even though initially with pay, was materially adverse. That is because the nature of Niskey's job was such that, without a security clearance, he could not perform any aspects of his job. A reasonable trier of fact could conclude that a total loss of ability to function as an employee amounted to "objectively tangible harm," *Czekalski*, 589 F.3d at 454. Indeed, such employment paralysis seems to be far more than the type of "purely subjective harm[ ]" for which suit might not stand. *Forkkio*, 306 F.3d at 1131 (reassigning an employee to a job with significantly different responsibilities can constitute an adverse employment action); *see also Douglas v. Donovan*, 559 F.3d 549, 553–556 (D.C. Cir. 2009).

The district court's reliance on *Forkkio*, *supra*, was misplaced. There, this court held that a federal employee's loss of his job title as "Section Chief" during an agency reorganization was not a materially adverse employment action. *Forkkio*, 306 F.3d at 1129. For good reason. In *Forkkio*, the employee retained the accoutrements of his position and continued to perform nearly all of the responsibilities of his job. *See id.* at 1130–1131. The reorganization also had no effect on his pay or benefits. Quite the opposite—Forkkio received a pay increase shortly after the reorganization. *Id.* at 1131.[1] In other words, Forkkio lost little more than his job title; the substance of his work, pay, and

---

[1] In addition to losing his "Section Chief" title, Forkkio also no longer attended weekly meetings with the other section chiefs, no longer received certain communications sent to management officials, and reported to a colleague who was previously his peer in the agency. *Forkkio*, 306 F.3d at 1129. Those changes bear little resemblance to the complete loss of job responsibilities that Niskey suffered.

benefits did not materially change for the worse. *Id*. Niskey, by contrast, alleges that he lost almost everything.

**B**

Niskey contends that he undertook sufficient efforts to exhaust his claims, and that inadequate agency responses merit equitable tolling of the ensuing time gaps in exhausting his claims. Niskey notes that, at his initial meeting with an EEO counselor in September 2002, the EEO counselor failed to begin the informal EEO process and instead instructed Niskey to wait until his security clearance was formally revoked to file a complaint. After that, the EEO counselor apparently did nothing more with Niskey's claim.

We agree that Niskey could not have been expected to file a formal EEO complaint during the four-year time period preceding his security clearance revocation. That is because the EEO counselor completely dropped the ball on processing his informal claim. By telling Niskey to delay filing a formal complaint until the security clearance was actually revoked, the counselor ignored her obligation under the regulations to begin the EEO process immediately and to inform Niskey of his rights in the process. *See* 29 C.F.R. § 1614.105(b)(1). Most relevantly, the counselor failed to apprise Niskey of the "administrative and court time frames" to which his claim was subject. *Id*.

Aggrieved employees, especially those proceeding *pro se*, justifiably rely on the instructions of EEO counselors in processing their claims. *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) ("Like other courts, we have excused parties who were misled about the running of a limitations period, whether by an adversary's actions, by a government official's advice upon which they reasonably relied, or by

inaccurate or ineffective notice from a government agency required to provide notice of the limitations period[.]") (citations omitted); *cf. Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091–1092 (D.C. Cir. 1985) ("The failure to contact an EEO Counselor within thirty days of the alleged discriminatory event may be excused if it is the result of justifiable reliance on the advice of another government officer."). Niskey, therefore, satisfied his obligation to initiate contact with the EEO Counselor within 45 days of his adverse personnel action, 29 C.F.R. § 1614.105(a)(1), and he is entitled to equitable tolling for the period that elapsed leading up to the final revocation of his security clearance.

Crediting Niskey's informal EEO claim only gets him so far though. The formal revocation of Niskey's security clearance in March 2006, the denial of his appeal of that revocation in May 2007, and his termination in August 2007, were new adverse employment actions that ended the period of equitable tolling. Once his security clearance was formally revoked, however, Niskey failed to follow the instruction he did receive: to file a formal complaint after his security clearance was permanently revoked. *See Dyson v. District of Columbia*, 710 F.3d 415, 422 (D.C. Cir. 2013) ("A 'petitioner is entitled to equitable tolling only if she shows * * * that she has been pursuing her rights diligently[.]'") (quoting *Holland*, 560 U.S. at 649) (alterations omitted).

To demonstrate timely exhaustion of those claims, Niskey points to his efforts to appeal the security clearance revocation, letters he submitted to agency officials challenging the various adverse personnel decisions, and his proceedings before the Merit Systems Protection Board. *See* Br. of *Amicus Curiae* in Supp. of Appellant at 8–10. None of those efforts suffices.

Niskey did not raise his racial discrimination and retaliation allegations in his security revocation proceedings. Instead, he chose to rely exclusively on procedural arguments. In addition, Niskey was specifically advised in his final notice of removal that, if he believed the decision was infected by racial discrimination or retaliation, he had to either contact the Department of Homeland Security EEO office or raise the allegation in his appeal to the Board ALJ. Niskey did neither.

After the Board ALJ ruled, Niskey did mention in his petition for review of the ALJ's decision to the Board that race discrimination was the reason he did not receive leave one day in September 2002. It seems unlikely, however, that having failed to allege race discrimination or retaliation before the ALJ, Niskey could raise a new discrimination claim for the first time in his petition for review to the Board, and thereby convert his claim to a mixed-case appeal. *See* 5 C.F.R. § 1201.115(d) (noting that one permissible rationale for granting a petition for review is if "[n]ew and material evidence or legal argument" becomes available that, "despite the petitioner's due diligence, was not available when the record closed"). What is less clear is whether, faced only with an *unpreserved* discrimination claim submitted to the Board, the employing agency should have notified him of the procedural rights that apply to the prosecution of mixed cases.[2]

We need not decide those questions here because, even if Niskey's failure to file a formal EEO complaint after his employer revoked his security clearance or immediately after

---

[2] Multiple provisions in 29 C.F.R. § 1614.302(b) describe an employing agency's notification duties related to mixed-case appeals. We have not yet had occasion to decide whether the untimely presentation of a discrimination claim to the Board that was not litigated before the ALJ triggers an obligation for the employing agency to provide the notice required by Section 1614.302(b).

the Board proceedings could be excused, Niskey still failed to diligently pursue his claims. He waited until November 2009, more than a year after the Board's final decision in 2008, to contact the EEOC's Washington Field Office. *See Niskey v. Department of Homeland Security*, No. DC-0752-08-0036-I-1, 2008 WL 3850801 (M.S.P.B. July 9, 2008). Then, after he was advised by the EEOC to file a formal complaint with the Department of Homeland Security's EEO office and was told that his previous delay would be excused, Niskey waited more than nine additional months—until September 2010—to file an EEO complaint with the Department.

That lengthy and unexplained delay in filing his formal complaint with the Department of Homeland Security does not evidence the diligent pursuit of Title VII rights that is required for equitable tolling. *See Dyson*, 710 F.3d at 422 (declining to apply equitable tolling to a complainant's seven-month delay in submitting her Intake Questionnaire to the EEOC). Accordingly, the district court properly dismissed Niskey's complaint for failure to administratively exhaust his racial discrimination and retaliation claims. The judgment of the district court is therefore affirmed.

*So ordered.*