KAREN LeCRAFT HENDERSON, Circuit Judge,
dissenting:
This case is a parable about the importance of reading and following instructions. Believing himself the victim of unlawful discrimination and retaliation, James Coleman filed a formal complaint with DHS’s EEO office. In response, that office sent *216 Coleman and his counsel a letter identifying the actions it believed underlay Coleman’s retaliation claim. Coleman’s counsel was instructed to respond if any actions had been misidentified. He never did. But now, Coleman contends his complaint,' in fact, asserts a claim not included in the EEO, letter; Unlike my colleagues, I believe his protest comes too late. In addition, my colleagues reinstate’ twci other retaliation claims because they believe the district court “applied the wrong legal standard.” Maj. Op. 215. I do not and therefore must dissent,
I.
I begin with the administrative-exhaustion issue. As the majority recounts, Coleman was required to exhaust his administrative remedies before suing under Title VII or the ADEA. See Niskey v. Kelly, 859 F.3d 1, 7 (D.C. Cir. 2017); 29 C.F.R. § 1614.103(a). As part of the exhaustion process, a prospective plaintiff must file a complaint with the agency that allegedly discriminated against him. See 29 C.F.R. § 1614.106(a). That complaint must be “sufficiently precise ... to describe generally the action(s) or practice(s) that form the basis of the complaint.” Id. § 1614.106(c). A complainant may also amend his complaint throughout the investigation to include other, issues and claims. Id. § 1614.106(d).
With his counsel’s' assistance, Coleman completed a DHS “Individual Complaint of Employment Discrimination” form. The form is a two-page document with twenty-[1] five numbered instructions. It solicits information about the complainant, his employment and the allegéd discriminatory actions. Instruction 15 focuses on the conduct at issue. In pertinent part, it reads:
15. A. Describe the action taken against you that you believe was discriminatory.
B. Give the date when the action occurred, ánd the 'name of each person responsible for the action.
C. Describe how you were treated differently from other employees, applicants, or members for any of the reasons listed in Item 16,[1]
D. Indicate what harm, if any, came to you in your work situation as a result of this action. (You may, but are not required to, attach extra sheets.)
Joint Appendix (JA) 188. In response, Coleman wrote “see attachment” and appended a three-page narrative with four headings corresponding to instruction 15’s four parts.
Coleman’s addendum is hardly a model of clarity.[2] In response to instruction 15.A, *217 which directs him to “[d]escribe the action .... you believe was discriminatory,” he includes just two paragraphs, only one centering on retaliation.[3] It reads:
Additionally, I experienced retaliation after I informed Donald Swain (white-male/over 40), Deputy Executive Secretary, via email on Saturday, December 11, 2010 that I initiated contact with the EEO and was contemplating filing a claim. Consequently, I was not selected for the Production Supervisor position and subsequently received a letter of counseling on December 30, 2010 and a formal letter of reprimand on January 28,2011.
Id. at 189. His answer to instruction 15.B, which, as set forth supra, tells him to tie the action described in 15.A to the date(s) and the person(s). responsible for the action, is far longer, totaling eleven paragraphs. Like his response to 15.A, it mentions letters of counseling and reprimand (collectively, the disciplinary letters). But it also mentions a host of other events. For example, Coleman describes a “mysterious message” directing him to go to a Washington, D.C. Starbucks where someone affixed an “envelope containing] a 'secret! document” to his vehicle’s windshield. Id. at 190. Coleman then tells of being “interrogated” about .his “scaring]” a co-worker by sitting in his vehicle while it idled in his assigned parking space. Id. He also describes an “astonishing]” email asking him to resume his morning shift team lead duties. Id. at 191. Also included in his rambling factual recitation is a brief description[4] of how Millhench was transferred to the production supervisor position which remained vacant after Alan Eckersley turned it down and for which Coleman was rejected because he failed to meet regularly with the “Deputy Associate Executive Secretariat.” Id. at 189. ,
Understandably, the EEO sought to clarify the scope of Coleman’s complaint in a May 2011 letter to Coleman’s lawyer. In pertinent part, it reads:
[DHS’s EEO Office] has carefully reviewed the complaint ,,. and the EEO Counselor’s Report.-
Based upon that review and the criteria established' by the- Equal Employment Opportunity Commission (EEOC) regulations at 29 CFR § 1614.107, I am accepting the following claims for processing:
Your client alleges he has been discriminated against and subjected to harassment and a hostile work environment on the bases of his race (African American), age (DOB [redacted]/61), and reprisal (filing instant complaint). The following are examples of incidents your client provides in support of his claims:
1. In June 2010, Complainant’s supervisor, Director of Secretary Briefing Staff (DSBS), informed Complainant that his non-selection for the (first) Supervisory Production Specialist position ... was due to- his weak briefing skills;
*218 2. In early December 2010, the DSBS informed Complainant that his non-selection for the (second) Supervisory Production Specialist position ,.. was due to his failure to greet [sic] the Deputy, Associate Executive Secretariat on a regular basis;
3. On December 13, 2010, the DSBS interrogated Complainant regarding a false statement a female co-worker made about Complainant;
4. On December 30, 2010, the DSBS gave Complainant a letter of counseling;
After contacting the HQ EEO Office on December 11, 2010, your client alleges the following incidents took place in reprisal for his protected EEO activity:
5. On January 28, 2011, the DSBS gave Complainant a letter of reprimand.
[[Image here]]
If you believe the above accepted claims have not been identified correctly, please notify our office in writing within seven (7) calendar days after your receipt of this letter, specifying why you believe your client’s claims were incorrectly identified. If you fail to contact our office, I will conclude that you agree with the claims as stated.
Id. at 127-28 (emphasis in original). Despite the letter’s notice, Coleman’s counsel did not respond. Nor did Coleman ever amend his administrative complaint. See 29 C.F.R. § 1614.106(d).
On these facts, I believe Coleman failed to exhaust the Millhench transfer claim. My conclusion flows naturally from our decision in Hamilton v. Geithner, 666 F.3d 1344 (D.C. Cir. 2012). There, a federal employee (Hamilton) brought a discrimination suit based on, inter alia, his agency’s 2002 decision to grant a work detail to another employee. Id. at 1348. We noted that, in a follow-up letter to Hamilton, the relevant EEO office identified the claim to be investigated as Hamilton’s 2003 non-promotion. Id. at 1350. We emphasized the letter told him to notify the office in writing if he “disagree[d] with the claim[.]” Id. If he did not respond, the letter said, the office would conclude “that [Hamilton] agree[d] with the claim(s) and [would] proceed with the investigation.” Id. Hamilton neither responded nor amended his complaint. Id. Accordingly, we found his claim unexhausted. Id. at 1351.
To me, the lesson is clear. If an EEO letter requests confirmation of a complaint’s scope and the complainant does not respond or amend his complaint, only those claims listed in the letter are treated as exhausted. That makes sense. Exhaustion serves important purposes. It “give[s] federal agencies an opportunity to handle matters internally whenever possible” and “imposefs] on employing agencies the opportunity as well as the responsibility to right any wrong that it might have done.” Niskey, 859 F.3d at 7 (internal quotation marks omitted). Those goals are frustrated if the agency is unsure what conduct to investigate. I see nothing unfair in requiring the complainant to dispel any uncertainty. Cf. Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (“[E]xhaustion requirements are designed to deal with parties who do not want to exhaust....”).
My colleagues attempt to salvage the transfer claim by distinguishing Hamilton. They stress that Hamilton, unlike Coleman, “made no mention” of the unexhaust-ed claim in his complaint. Maj. Op. 212 (brackets and internal quotation marks omitted). I believe this distinction is without effect. The law demands more from a complaint than some reference to the relevant events. Cf. 29 C.F.R. § 1614.106(c) (The complaint “must be sufficiently precise ... to describe generally the action(s) or practice(s) that form the basis of the *219 complaint.”)- And Coleman’s garbled discussion is of little value. His 15.A response makes no reference to the Millhench transfer.[5] Worse for him, it suggests that the Millhench transfer was not part of his retaliation claim. Coleman complains that he “was not selected for the Production Supervisor position and subsequently received a letter of counseling on December SO, 2010.” JA 189 (emphasis added). But Millhench’s transfer occurred on January 16, 2011. December 30, 2010 would not be “subsequent[ ]” to the complained-of action if he were describing the Millhench transfer. Coleman’s reference to the Millhench transfer in 15.B hardly clarifies matters, as his answer describes events that plainly could not be considered retaliatory. For example, he describes a February 2, 2011, email from his supervisor “ask[ing] ... if she could reinstate [him] as the morning shift team lead.” Id. at 191. This is hardly the stuff of retaliation. And Coleman’s complaint confirms as much by identifying January 28,2011—several days earlier—as the date of the final challenged action, ie., the reprimand letter.[6]
Perhaps aware of the limitations of his complaint, my colleagues contend the EEO letter accepts Coleman’s retaliation claim “without any temporal or content limitations.” Maj. Op. 212. To reach this conclusion, they read the EEO letter’s “plain text” as drawing “a distinction between ‘claims’ to be processed and ‘examples’ of evidence to support those claims.” Id. at 211. In their view, the letter chooses to “describe the discrete acts of retaliation ... as mere ‘examples’ of factual incidents that might support Coleman’s claim[.]” Id. But the majority misreads the EEO letter. Although the EEO letter lists four “examples of incidents [Coleman] provide[d] in support of his claims[,]” JA 127, it identifies just one action that Coleman “allege[d] ... took place in reprisal for his protected EEO activity[,]” that is, the January 28 letter of reprimand. Id. at 128. Nowhere does the letter say that one action is simply an “example.” Fairly read, the EEO letter does not suggest that office acknowledged a reprisal claim based on the Mill-hench transfer.
Coleman’s subsequent actions confirm my view. As the majority notes, see Maj. Op. 207-08, Coleman completed a sworn EEO declaration in July 2011. The declaration belies the majority’s reading of the EEO letter. The declaration’s first page identifies “[t]he accepted issue in this com *220 plaint” as “[w]hether DHS discriminated against Complainant and subjected him to a hostile work environment on the bases of race ..age ..and reprisal” based on five enumerated actions.[7] JA 147. The five actions—which are not labeled “examples”—contain no mention of the Millhench transfer.
Accordingly, I would hold Coleman failed ■ to exhaust the Millhench transfer claim. My conclusion is hardly stinting. Coleman had plenty of opportunities to alert the EEO office to his claim. He could have done so when instructed to “[describe the action taken against [him] that [he] believe[d] was [retaliatory].” Id, at 188. He could have done so when further instructed to “notify [the EEO] office” “[i]f ... the ... accepted claims [were] not identified correctly[.]” Id, at 128. He could have done so in his sworn EEO declaration which identified five events—none the Millhench transfer—that underlay his claims. Or he could have amended his complaint during the EEO investigation. See 29 C.F.R. § 1614.106(d). Instead, he did nothing. More compelling still, he declared under penalty of perjury that the “accepted issue in [his] complaint” included five challenged actions, none including the Mill-hench transfer. JA 147. At some point, a party—especially- one represented by counsel—must live with his choices. I believe that moment came and went for Coleman long ago;[8]
H.
My colleagues also conclude the district court erred in rejecting Coleman’s retaliation claim based on the DHS disciplinary letters.[9] In their view, the district court applied the wrong standard because it examined whether those letters were “adverse employment actions” and not whether the “ ‘employer’s challenged action ... well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.’” Maj. Op. 215 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. C&. 2006)). I see little, if any, inconsistency. “To prove retaliation, the plaintiff generally must establish that he or she suffered ... a materially adverse action,... ” Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008). An action is materially adverse if it would “dissuade a reasonable worker from making or supporting a charge of discrimination.” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126. S.Ct. 2405, 165 L.Ed.2d 345 (2006). In other words, I believe .the district court applied the very standard—by necessary implication, at least—that my colleagues suggest it overlooked.
The majority may fault the district court for referring to an “adverse employment action.” Coleman v. Johnson, 19 F.Supp.3d 126, 134 (D.D.C. 2014) (emphasis added). Granted, the challenged retaliatory action need not “relate[ ] to the plaintiffs employment,” Rochon, 438 F.3d at 1219, and retaliatory adverse action “encompass[es] a broader sweep of actions than those in a pure. discrimination claim[,]” Baloch, 550 F.3d at 1198 n.4. Nevertheless, I do not *221 think this distinction was lost on the district court. The court determined the disciplinary letters did not “qualify as adverse employment actions ... for either discrimination, claims or retaliation claims” Coleman, 19 F.Supp.3d at 134 (emphases added). And it based its conclusion on our retaliation precedent; See id. (citing, inter alia, Baloch, 550 F.3d at 1199). That precedent teaches that a letter of counseling or reprimand that provides “job-related constructive criticism” generally does not constitute the “materially adverse action” needed “[t]o prove retaliation” unless it contains “abusive language” or portends further—more tangible—harms. See Bal-och, 550 F.3d at 1198—99 (internal quotation marks omitted).[10] Neither caveat exists in Coleman’s case. Perhaps “adverse employment action” is inartful phrasing.[11] If so, it is a peccadillo we, too, have committed, E.g., Allen v. Johnson, 795 F.3d 34, 39 (D.C. Cir. 2015) (“[A] retaliation plaintiff need only show that she engaged in protected activity, that she suffered an adverse employment action, and that there was a causal link between the former and the latter.” (emphasis added)). But it does not require reversal.
Accordingly, I respectfully dissent.

. The listed reasons are “race," "color,” "religion,” “national origin,” “sex,” "age,” "physical or mental disability,” "retaliation/reprisal,” “sexual orientation,” "parental status” and “protected genetic information.” JA 188.

. The majority rejoins that "our precedent does not demand. a ‘model of clarity’ from often-pro se EEO complainants.” Maj. Op. 212. But Coleman had counsel, which fact makes the .cited precedent irrelevant. The majority nonetheless persists in its attempt to fold a party represented by counsel into a pro se party together with the leniency given the latter, citing Artis v. Bernanke, 630 F.3d 1031, 1034-35 (D.C. Cir. 2011). But its reliance is plainly misplaced. There, we addressed the fact-bound question of whether the putativplaintiff class satisfactorily engaged in EEO counseling regarding claims of systematic racial discrimination, see id. at 1032, 1035; it had nothing to do with the construction of a pro se complaint. Likewise, Wilson v. Peña, 79 F.3d 154, 163-64 (D.C. Cir, 1996), is inappo-site as it concluded, in pertinent part, that a Title VII limitations period did not begin trun when the agency misinformed the complainant, represented by counsel, of his time to file suit—again, it had nothing to do with the construction of a complaint, whether drafted with or without counsel. See id. at 163-64,

. The other described an allegedly discriminatory (but, based on chronology, not retaliatory) action taken by his supervisor in not promoting him earlier in 2010 to one of two production supervisor positions because of his deficient "briefing skills,” That position was eventually filled by John Destry.

. Specifically, Coleman says:
In January Boyden Rohner announced that Kara Millhench was given the Production Supervisor position although she previously implied I would be selected for the position .... Kara Millhench informed me that she did not apply for the'Production Supervisor position; she stated that Boyden Roh-ner came to her and asked her if she wanted the Production Supervisor position...,
JA 191-92.

. Again, that question asked Coleman to “[d]escribe the action taken against [him] that [he] believe[d] was discriminatory.” JA 188.

. The majority contends that I "do[ ] not dispute that the complaint encompassed” "the Millhench transfer issue.” Maj. Op. 213. My colleagues therefore believe (apparently) that I regard the acceptance letter as "erasing the claim.” Id. (emphasis added). But that elides the distinction between an event and a claim. Plainly not every event mentioned in a complaint: is automatically its own claim. So recognizing, the majority emphasizes that "[w]hat matters is that the Millhench transfer is a complained-of event.” Maj. Op. 213 n.6. But how? Nothing in Coleman’s description of the transfer suggests he thought it retaliatory. See supra n.4. And why consider only this a “complained-of” event and not Rohner’s "astonish[ing]” email or her interrogation of him regarding the parking lot incident? When faced with a complaint of this opacity, an EEO office needs some way to separate the wheat from the chaff. What matters, I submit, is that the administrative steps of a Title VII claim be followed as required by, inter alia, our precedent. A sensible solution—one sanctioned by Hamilton—is for the EEO office to clarify the complaint’s scope. That is what the EEO office did here. But under the majority’s reading, such efforts have no effect and, instead, the initial complaint, deficient though it may be, sets the matter in amber. In this case, the amber more accurately resembles sand. If this is indeed the import of our exhaustion precedent, including, specifically, Hamilton, exhaustion has become a dead letter.

, Those five actions mirror the EEO letter’s four “examples of incidents” and one act of reprisal.

. The majority tries to equate Coleman’s failure to follow instructions with the EEO office’s alleged failure to “follow the rules” governing claim dismissals. Maj. Op. 213. The cited' rules require the EEO office to, inter ■ alia, give notice of and explain partial dismissals. The majority does not explain how that office could be blamed for not explaining dismissal of a claim not made.

.Again, those letters were the December 30, .2010, and January 28, 2011, letters of counseling and reprimand, respectively.

. Incidentally, the majority—like the district court—relies on Baloch. See Maj. Op. 215.

. I find it noteworthy that my colleagues swallow the camel (bumbling complaint) but choke on the gnat (district court nit).