# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 8, 2016   Decided August 15, 2017

No. 15-5258

JAMES COLEMAN,
APPELLANT

v.

ELAINE C. DUKE, ACTING SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01352)

*Nathaniel D. Johnson* argued the cause and filed the briefs for appellant.

*Jeremy S. Simon*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: HENDERSON, TATEL and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

MILLETT, *Circuit Judge*: James Coleman is an African-American who worked for the Department of Homeland Security. He alleges that the Department's decision to give a promotion for which he was qualified to a Caucasian female employee just four weeks after he had complained of race and age discrimination was unlawful retaliation. The district court dismissed the retaliation claim for failure to exhaust administrative remedies. Because Coleman expressly raised the non-promotion retaliation claim in his equal employment opportunity complaint, we reverse.

# I

## A

Title VII protects employees from "discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The Age Discrimination in Employment Act ("ADEA") likewise prohibits discrimination in employment on the basis of age (40 years of age or older). 29 U.S.C. §§ 623(a)(1), 631(a). Title VII's and the ADEA's protections extend to federal employees. 42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633a(a). Of most relevance here, Title VII and the ADEA both prohibit retaliation against a person who files a claim under or otherwise opposes practices made unlawful by those statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).

Before bringing Title VII and ADEA claims to court, federal employees must administratively exhaust their claims. *See Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). The same

administrative exhaustion process governs both Title VII and ADEA retaliation claims. *See* 29 C.F.R. § 1614.103(a).

To start the administrative process, an employee must contact an equal employment opportunity ("EEO") Counselor at his employing agency within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a)(1).[1] The Counselor then must investigate the claim. *Id.* § 1614.105(d). If the claims are not resolved to the employee's satisfaction, the Counselor must notify the employee of the right to file a formal discrimination complaint. *Id.*

After receipt of that written notice, the employee has fifteen days to file a formal complaint with the employing agency's EEO office. 29 C.F.R. § 1614.106(b). The agency then has 180 days to complete its investigation of the complaint and to attempt to resolve it. *See id.* § 1614.108(e). During that 180-day period, agencies are supposed to acknowledge receipt of the complaint in writing. UNITED STATES EQUAL EMP. OPPORTUNITY COMM'N, EEO-MD-110, EQUAL EMP. OPPORTUNITY MGMT. DIRECTIVE FOR 29 C.F.R. PART 1614, at 5-1 (Rev. Aug. 5, 2015) ("EEOC Directive"). In addition, "[w]ithin a reasonable time" after obtaining a report from the Counselor, the agency "should send the complainant a second letter (commonly known as an 'acceptance' letter), stating the claim(s) asserted and to be investigated." *Id.*[2]

---

[1] Non-employees claiming discrimination or retaliation in hiring decisions must file their claims with the agency with which they sought employment. *See* 29 C.F.R. § 1614.106(a); *Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005).

[2] The Commission issued Management Directive 110 to advise federal agencies about Commission "policies, procedures, and guidance relating to the processing of employment discrimination

If the employing agency fails to timely resolve the employee's claims, the employee may bring his claims to federal court. 29 C.F.R. § 1614.407(b); *see also Wilson v. Peña*, 79 F.3d 154, 166 (D.C. Cir. 1996).

**B**

James Coleman worked for the Department of Homeland Security as a Production Specialist on the Secretary's Briefing Staff. In June 2010, the Department posted a job vacancy announcement for a Supervisory Production Specialist. Coleman applied and was selected to interview for the position. However, Coleman did not get the job. He was told that he was not promoted because he had weak briefing skills. The position was not filled.

In the Fall of 2010, the Department posted a job vacancy announcement for two Supervisory Production Specialist positions. The vacancy announcement included the following "Major Duties":

> Directs the preparation of daily operations and intelligence briefings for the Secretary ensuring that the submissions are of the highest quality and are anticipatory of any questions the Secretary may ask.
>
> Screens, evaluates, and analyzes a large quantity of all-source information from various sources and ensures that information presented

---

complaints[.]" *Department of Air Force, 436th Airlift Wing, Dover Air Force Base v. Federal Labor Relations Auth.*, 316 F.3d 280, 282 (D.C. Cir. 2003).

meets the specific needs of the Secretary of Homeland Security.

Assists Production Specialists by prioritizing work, organizing materials, developing and applying basic analytical techniques and preparing final products for the Secretary's briefings.

Trains and mentors the briefers to ensure that they are equipped and prepared to deliver accurate, articulate, and meaningful briefs.

Ensure[s] proper coordination and vetting is completed and requests for additional information or taskings issued on behalf of the Secretary are tasked appropriately and tracked to completion.

J.A. 111. The announcement also stated that applicants were required to have at least one year of specialized experience "in the federal service or equivalent including the following:"

- Preparing in-depth briefings for national and/or global events.

- Developing written products for senior level management officials to include writing, editing, and coordinating briefing presentations.

- Analyzing information from various sources and prepar[ing] briefings and final products for senior level management.

- Working with groups and committees at senior agency levels to coordinate the exchange of information.

J.A. 112

Coleman, who had previously received an "exceeds expectations" performance evaluation, applied for the position. The supervisory position would have given him a grade-level promotion with increased pay and professional status. The Human Resources Department determined that Coleman was "qualified" for the position, and Coleman was one of the qualified applicants selected to be interviewed. *Coleman v. Johnson*, 19 F. Supp. 3d 126, 130 (D.D.C. 2014).

Around October 29, 2010, the selection board offered the positions to John Destry and Alan Eckersley, both of whom were Caucasian men.[3] Coleman was not selected. While Destry accepted the position, Eckersley declined it the next week, leaving one position still unfilled. Coleman was told that he was not selected because he failed "to greet the Deputy, Associate Executive Secretariat on a regular basis." J.A. 127.

On December 11, 2010, Coleman contacted the Department's EEO office alleging both race discrimination in the denial of his promotion and unlawful harassment by his co-workers. Eighteen days later, Coleman's supervisor, Boyden Rohner, issued Coleman a "Letter of Counseling" admonishing Coleman for failing to respond to an email inquiry.

On January 16, 2011, Rohner filled the open supervisory position by laterally transferring into the position Kara

---

[3] According to Boyden Rohner, Destry was under the age of 40 at the time of selection and Eckersley was over 40.

Millhench, a GS-14 detailee on assignment to the Secretary's Briefing Staff. Millhench is a Caucasian woman and was under the age of 40. On January 28, 2011, Rohner issued a "Letter of Reprimand" to Coleman allegedly for twice failing to complete a checklist at the end of his shift.

Coleman continued to pursue his discrimination claims with the EEO office and added claims of retaliation. On February 17, 2011, Coleman filed a formal discrimination complaint with the Department. The complaint listed January 28, 2011, as the "date of [the] most recent discriminatory event," and sought attorney's fees, promotion to a GS-14 position, reassignment, and to "have both [the] letters of counseling and reprimand rescinded." J.A. 188. Attached to Coleman's complaint were his responses to an EEO questionnaire. In that questionnaire, Coleman explicitly referred to Millhench's hiring, stating that

> In January[,] Boyden Rohner announced that Kara Millhench was given the Production Supervisor position although she previously implied I would be selected for the position. * * * Kara Millhench informed me that she did not apply for the Production Supervisor position; she stated that Boyden Rohner came to her and asked her if she wanted the Production Supervisor position.

J.A. 190–191.

Coleman again referred to Millhench's hiring, and specifically asserted that he had more relevant briefing experience than she did, in an EEO declaration that is a formal component of the EEO complaint record. *See* J.A. 156; *see also id*. at 147 (establishing that the EEO declaration "will be

used as a part of the record in an equal employment discrimination complaint").

On May 13, 2011, the Department's EEO office sent Coleman a letter "accepting [Coleman's] * * * claims for processing[.]" J.A. 127. The claims accepted by the EEO for its handling were Coleman's allegations "that he ha[d] been discriminated against and subjected to harassment and a hostile work environment on the bases of his race (African American), age * * *, and reprisal (filing instant complaint)." *Id.* The acceptance letter then listed "examples" of incidents that Coleman had identified to support his "claims":

1. In June 2010, Complainant's * * * non-selection for the (first) Supervisory Production Specialist position * * * [which his supervisor said] was due to his weak briefing skills;

2. In early December 2010, * * * Complainant['s] * * * non-selection for the (second) Supervisory Production Specialist position, * * * [which his supervisor said] was due to his failure to greet the Deputy, Associate Executive Secretariat on a regular basis;

3. On December 13, 2010, the [supervisor] interrogated Complainant regarding a false statement a female co-worker made about Complainant;

4. On December 30, 2010, the [supervisor] gave Complainant a letter of counseling;

> After contacting the HQ EEO Office on December 11, 2010, your client alleges the following incidents took place in reprisal for his protected EEO activity:
>
> 5.    On January 28, 2011, the [supervisor] gave Complainant a letter of reprimand.

J.A. 127–128.  The letter advised Coleman that, if he believed the "accepted claims ha[d] not been identified correctly," he should notify the EEO office within seven days.  J.A. 128. Coleman did not advise the EEO office of any errors.

After a year passed without any decision from the Department's EEO office, Coleman withdrew his administrative complaint and filed suit in the United States District Court for the District of Columbia.  As relevant here, Coleman's complaint alleged that he was denied the promotion because of his race and age and in retaliation for his filing of Title VII and ADEA claims with the EEO office.

The Department moved to dismiss the complaint or, in the alternative, for summary judgment.  *Coleman v. Johnson*, 19 F. Supp. 3d 126, 129 (D.D.C. 2014).  With respect to the claim of retaliation in the denial of promotion, the district court ruled that the decision not to promote Coleman had already occurred by October 29, 2010, so it could not possibly have been made in retaliation for an EEO claim made almost two months later. *Id.* at 135.  With respect to Coleman's argument that the decision to laterally transfer Kara Millhench into the vacant position rather than offer the still-open position to him was a separate retaliatory act, the court ruled that Coleman had failed to exhaust that claim.  *Id.* at 136-137.  The district court pointed to the lack of any response by Coleman to the EEO acceptance

letter that did not specifically mention the Millhench transfer. *Id.*

With respect to Coleman's claims that the Letter of Counseling and Letter of Reprimand were racially discriminatory and retaliatory, the district court ruled that neither was an actionable adverse employment action. *Coleman*, 19 F. Supp. 3d 134–135.

After allowing discovery on the claim alleging race discrimination in the denial of promotion, the district court entered summary judgment for the Department. *Coleman v. Johnson*, No. 12-1352, 2015 WL 4751022, *10 (D.D.C. Aug. 11, 2015). The court accepted as a legitimate, non-discriminatory reason for not hiring Coleman that he was less qualified than Destry and Eckersley, and concluded that none of Coleman's challenges to the evidence or decisional process had merit. *Id.* at *7–*10.

After Coleman appealed, a panel of this court summarily affirmed the grant of summary judgment on all of Coleman's race discrimination claims, but denied summary affirmance of the dismissal of his retaliation claims. *See Coleman v. Johnson*, No. 15-5258, 2016 WL 3040902, at *1 (D.C. Cir. May 18, 2016). Accordingly, our review is limited to Coleman's claims of retaliation. Compl. ¶¶ 50–59.

## II

We review *de novo* both the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and the grant of summary judgment. *See Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015); *Morris v. McCarthy*, 825 F.3d 658, 667 (D.C. Cir. 2016). In analyzing the district court's dismissal for failure to

state a claim, we accept as true all factual allegations in the complaint. *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008).

A party is entitled to summary judgment "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016) (quoting FED. R. CIV. P. 56(a)). Because the district court entered summary judgment in favor of the Department, "we take 'the facts in the record and all reasonable inferences derived therefrom in a light most favorable to'" Coleman. *Al–Saffy v. Vilsack*, 827 F.3d 85, 89 (D.C. Cir. 2016) (quoting *DeGraff v. District of Columbia*, 120 F.3d 298, 300 (D.C. Cir. 1997)).

**A**

Contrary to the judgment of the district court, we hold that Coleman properly exhausted his retaliation claim pertaining to the denial of a promotion.

To administratively exhaust his retaliation claim, Coleman had to timely provide the Department with "sufficient information to enable the agency to investigate the claim[s]." *Artis v. Bernanke*, 630 F.3d 1031, 1034–1035 (D.C. Cir. 2011); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012).

There is no dispute that Coleman timely contacted an EEO counselor at the Department of Homeland Security within 45 days of the denial of promotion in late October 2010. After the transfer of Kara Millhench in mid-January 2011, he added retaliation to his EEO claim. *Coleman*, 19 F. Supp. 3d at 130–131.

Coleman also timely filed his formal administrative EEO complaint with the Department, which included the retaliation claim. Coleman checked the boxes on the form to indicate that his claims were based on both retaliation for protected EEO activity and race and age discrimination. In addition, the administrative complaint states that the most recent discriminatory event occurred on January 28, 2011, covering the entire time period from the October promotion denial through the Millhench transfer. Even more clearly, Coleman made his responses to a detailed questionnaire a formal part of his administrative complaint, specifically including his discussion of the procedurally unusual hiring of Kara Millhench for the supervisor position for which Rohner had "previously implied [Coleman] would be selected." J.A. 190.[4]

Finally, Coleman provided a signed declaration to the Department that the Department expressly confirmed would "be used as a part of the record in [his] equal employment opportunity discrimination complaint," J.A. 147. That declaration included the following question and response:

> 31) Question: Who was selected for the position? Do you know the selectee/s? If yes,

---

[4] Coleman's detailed questionnaire was attached to his formal EEO Complaint. Accordingly, we treat that attachment as a part of the complaint itself. *See, e.g.*, *Brooks v. District Hosp. Partners, L.P.*, 606 F.3d 800, 808 (D.C. Cir. 2010) (concluding that individuals listed in attachments to a formal EEO complaint exhausted their administrative remedies, where the complainant filed the complaint on behalf of herself and similarly situated individuals, including individuals listed in the attachments); *Addison v. Woodward & Lothrop*, 976 F.2d 45, 45 (D.C. Cir. 1992) (unpublished disposition) (remanding to the district court to address whether the formal EEO "complaint and attachment" provided sufficient notice of the complainant's claim).

compare your qualifications to those of the selectee/s. Do you believe that you are better qualified? Explain your answers. Be specific.

Answer: John Destry (white male under 35) and Kara Millhench (white female under 35). I had never met Mr. Destry; however, I worked with Ms. Millhench because she was a briefer. I had successfully performed the job for over 20 months. Neither of the selectees had previous Production Supervisor experience.

J.A. 156 (emphasis omitted).[5]

Coleman's formal complaint gave the Department adequate notice that he was challenging the Millhench transfer as retaliatory by (i) listing the date of the last discriminatory event to cover the time of Kara Millhench's transfer, (ii) attaching to the formal complaint a document explicitly referencing Millhench's transfer for a job that in Coleman's view had been implicitly slated for him and for which he was allegedly more qualified, and (iii) putting into the record a signed declaration that discussed Millhench's transfer as part of his EEO retaliation and discrimination claims. *See Artis*, 630 F.3d at 1034–1035 (a complainant must provide "sufficient information to enable the agency to investigate the claim[s]"). The informal EEO process, which is commonly pursued *pro se*, does not require more elaborate argumentation by claimants. *See, e.g.*, *Adams v. Rice*, 531 F.3d 936, 952–953 (D.C. Cir. 2008) (rejecting the government's argument that an employee failed to administratively exhaust her disability claim even

---

[5] Why, in light of this paragraph, the dissenting opinion suggests that Coleman did not mention the Millhench event in his sworn EEO declaration is indiscernible. *See* Dissenting Op. at 10.

though her EEO complaint did not explain how her disability substantially limited a major life activity); *cf. Artis*, 630 F.3d at 1035 ("An agency risks misusing the counseling requirement when it demands excessively detailed support" for an EEO claim.).

The district court ruled that Coleman failed to timely exhaust his retaliation claim because the only potentially retaliatory act—Coleman's non-promotion to the supervisory position—occurred in late October 2010 when the supervisory positions were first offered to Destry and Eckersley. And that was prior to Coleman's contact with the Department's EEO office in December 2010. *See Coleman*, 19 F. Supp. 3d at 135–137. But the district court overlooked that Eckersley declined the promotion, and so the opening for which Coleman had applied, had been deemed "qualified," *id*. at 130, and had been interviewed remained unfilled until January 2011—a month after Coleman filed his EEO claim, *id*. at 130–131. The continuation of the hiring process thereby provided a plausible chronological and factual predicate for Coleman's claim of retaliation.

The Department points to the acceptance letter sent by the EEO office after Coleman filed his complaint. The purpose of the letter was to identify the "claim(s)" asserted and "to be investigated." EEOC Directive at 5-1. The EEO letter explained that the Department was "accepting the following claims for processing: Your client alleges he has been discriminated against and subjected to * * * reprisal (filing instant complaint)." J.A. 127.

That supports Coleman not the Department. The EEO letter expressly confirms that (i) Coleman was pressing a retaliation claim, and (ii) the timeframe for that alleged

retaliation went up to the time of filing the "instant complaint," which includes the Millhench hiring.

The Department emphasizes that the letter went on to list "examples of incidents" that Coleman provided "in support of his claims[.]" J.A. 127. That list of examples does not reference Millhench's transfer into the supervisory position. Coleman, the Department stresses, did not dispute the letter's list of his claims, and the district court cited that as evidence of the failure to exhaust. *See Coleman*, 19 F. Supp. 3d at 136–137.

That misreads the letter. For whatever reason, the letter's plain text drew a distinction between "claims" to be processed and "examples" of evidence to support those claims. *Cf. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("We have repeatedly interpreted the term '[unlawful employment] practice' to apply to a discrete act or single 'occurrence.'"). There can be no dispute that "reprisal" for filing with the EEO was expressly identified as one of the "claims" to be "process[ed]." J.A. 127. And, given the letter's choice to describe the discrete acts of retaliation or discrimination as mere "examples" of factual incidents that might support Coleman's claims, Coleman was not given fair notice that he had to object to or disagree with the EEO's identification of the "accepted claims," J.A. 128.

If the Department's EEO office had intended to narrow the scope of the complaint, it could not do so elliptically or confusingly through its list of evidentiary "examples." Because so many claimants are proceeding *pro se*, EEOC Management Directive 110 provides that, if the acceptance letter's "statement of the claim(s) asserted and claim(s) for investigation differs" from the formal complaint, the letter "shall explain the reasons for the difference, including whether

the agency is dismissing a portion of the complaint." EEOC Directive at 5-1. Moreover, any such partial dismissal would have triggered additional regulatory notice requirements, such as alerting the employee in writing that the agency intends to partially dismiss claims rather than investigate them, and providing an explanation for their dismissal. *See* 29 C.F.R. § 1614.107. None of that happened here.

In holding that Coleman failed to exhaust his retaliation claim as to the Millhench transfer, the district court and the dissenting opinion (at 7–8) rely on our decision in *Hamilton v. Geithner*, *supra*. *See Coleman*, 19 F. Supp. 3d at 135–138. But *Hamilton* was very different. There we held that a federal employee failed to administratively exhaust a claim of race and gender discrimination in awarding an agency detail in 2002 because "Hamilton's formal EEO complaint ma[de] no mention of the 2002 detail" at all. *Hamilton*, 666 F.3d at 1350. In addition, when the EEO office's acceptance letter expressly confined his discrimination claim to only a separate denial of "promotion" "*on August 11, 2003*," Hamilton ignored the agency's invitation to correct the statement of his claims to include denial of the detail or even to indicate that the claim was not confined to that single August day in 2003. *Id.* (emphasis added).

Unlike Coleman's case, which turns on the content of his complaint, Hamilton's argument was that he adequately exhausted the claim by presenting it in an informal EEO counseling session. *Hamilton*, 666 F.3d at 1350. But as this court explained, "[f]iling a formal complaint is a prerequisite to exhaustion," and so a complainant "cannot rely on the EEO counseling report to establish exhaustion of a claim that he failed to include in his formal complaint." *Id.*

Coleman made none of Hamilton's mistakes. His formal complaint, including its attachments, raised the Millhench reprisal claim, and his supplementary declaration as part of the EEO record itself reconfirmed his inclusion of that claim. In addition, the EEO acceptance letter expressly included "reprisal" as one of his claims, without any temporal or content limitations. J.A. 127. Under *Hamilton*, that suffices for exhaustion.

The dissenting opinion notes that Coleman's "addendum is hardly a model of clarity." Dissenting Op. at 2. Fair enough. But because complainants are often *pro se*, our precedent does not demand "a model of clarity" in EEO complaints. We require only that the complainant provide "sufficient information to enable the [Department] to investigate the claims." *Artis*, 630 F.3d at 1035. Coleman did that, and "[t]o hold otherwise would turn the informal" EEO process "into a trap for unwary counselees rather than a step toward remediation[.]" *Id.* But, the dissenting opinion objects, Coleman raised the Millhench transfer in response to question "15. B." of Coleman's complaint attachment, instead of question "15. A." Dissenting Op. at 2–4; *see id.* at 8. It is hard to think of a more obvious "trap for unwary [complainants]" than a hyperformalistic rule like that. *Artis*, 630 F.3d at 1035.

The dissenting opinion also says we should adopt a whole new standard for exhaustion here because Coleman was represented by counsel when he filed his EEO complaint. Dissenting Op. at 2 n.2. Circuit precedent says doing that would be "perverse." *Wilson*, 79 F.3d at 163–164 ("[I]t would be perverse to deprive Wilson of the benefit of the new limitations period simply because he is represented by counsel, whose assistance he sought in an effort to protect his rights under Title VII.").

The other difficulty with the dissenting opinion's approach is that it fails to answer the most fundamental question concerning the acceptance letter: where did the Millhench transfer issue go? The dissenting opinion does not dispute that the complaint encompassed it. Reliance on the acceptance letter as erasing the claim, without any clear notice and explanation of that specific consequence to Coleman—as the dissenting opinion proposes—would license agency circumvention of those settled rules while effectively shifting the burden from the expert EEO office to the complaining employee to assert again claims already asserted once before within the original complaint. That is not how the EEO process works. *See President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980) ("Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of 'rooting out * * * every vestige of employment discrimination within the federal government.'") (quoting *Hackley v. Roudebush*, 520 F.2d 108, 136 (D.C. Cir. 1975)).[6]

Our decision in *Hamilton* held that the complaint is the operative document, 666 F.3d at 1350, as the Department agreed at oral argument, Oral Arg. Tr. at 11:13–16 ("Well, your Honor, first the operative document is his formal complaint, and that identifies, it says describe the actions taken against you that you believe were discriminatory, so that is the list."). So to the extent there is a conflict between the acceptance letter and Coleman's EEO complaint documents, our precedent, the Management Directive, and the Department all agree that the complaint takes precedence.

---

[6] Contrary to the dissenting opinion's view, we do not "elide[] the distinction between an event and a claim." Dissenting Op. at 8 n.6. What matters is that the Millhench transfer is a *complained-of* event in the complaint and its attachments.

Finally, the dissenting opinion says (at 8–9 n.6) that EEO counselors must be able to "separate the wheat from the chaff." But there is no question that they can do that already if they just follow the rules. *See* 29 C.F.R. § 1614.107 (explaining the notice requirements for partial dismissal of claims in an EEO complaint); EEOC Directive at 5-1 (requiring the Department's EEO office to "explain the reasons for the difference [between the acceptance letter and the EEO complaint], including whether the agency is dismissing a portion of the complaint"). Here, the agency EEO did not follow those established rules for disposing of claims raised in the complaint. In that regard, we agree with the dissenting opinion that this case is about the "importance of * * * following instructions." Dissenting Op. at 1.[7]

**B**

The Department contends that, even if Coleman exhausted his Millhench retaliation claim, it is entitled to summary judgment because Coleman failed to rebut the Department's

---

[7] Because Coleman exhausted his retaliation claim with respect to the Millhench transfer, we need not decide whether the Millhench retaliation claim was also exhausted under the "like or reasonably related to" doctrine. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.' At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'") (citations omitted); *see also Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (declining to decide the viability of the "like or reasonably related to" doctrine after *Morgan*, 536 U.S. 101). We note though, that a claim that is actually exhausted is, perforce, "like" an exhausted claim.

legitimate, non-retaliatory reason for the transfer. Department Br. 30. The record is insufficient to support the Department's argument.

The Department has identified two reasons for transferring Millhench into the vacant supervisory position: (i) it was more convenient and efficient to transfer Millhench into the position than to re-advertise it, and (ii) Millhench had "relevant experience" that Coleman lacked, Department Br. 31, because she was already performing briefing duties, which purportedly was the most "critical" requirement for the new position, *Coleman*, 2015 WL 4751022, at \*8 ("[Coleman] did not perform any briefing."). Neither of those rationales are inherently legitimate or non-pretextual. Nor does either rely upon undisputed facts. The failure to advertise a position competitively itself can support a Title VII claim and can be considered an adverse action. *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000). And Coleman disputes Millhench's comparative qualifications for the position, an allegation that is plausibly grounded in the record evidence showing that Coleman was deemed "qualified" for the position when he was interviewed.

The Department is correct that there is nothing in the record to rebut its proffered reasons for transferring Millhench into the vacant role. But that is because the district court entered summary judgment against Coleman on exhaustion grounds without permitting any discovery pertaining to the Millhench transfer or to Coleman's and Millhench's relative qualifications. Neither have the parties identified anything in the record that addresses Millhench's and Coleman's relative qualifications. The record thus is at best silent as to whether Coleman had acquired equivalent briefing experience to Millhench, or was otherwise at least equally qualified for the promotion by January 2011.

Viewed in the light most favorable to Coleman, the record shows that Coleman was qualified for the position, and he was one of only a select number of qualified applicants to be interviewed. It is also telling that, after Coleman's non-selection in October 2010, no one told him that it was due to a lack of briefing experience, as they had when he first applied in June 2010. A reasonable inference thus is that Coleman had cured any deficiency before he applied the second time and was found to be qualified. Indeed, Coleman was told that he did not get the position on the second round for the rather cryptic reason that he failed "to greet the Deputy, Associate Executive Secretariat on a regular basis"—a requirement that appeared out of the blue, having never previously been mentioned in the job requirements or description and that was not discussed at all with respect to Millhench. J.A. 127. Then, within a month of Coleman's EEO contact, Rohner chose not to reopen the position to competitive hiring and instead laterally transferred into the position someone who never applied for the job. *Id.* at 131. That sudden change in the hiring process is the type of action that a reasonable jury could find supports a finding of retaliatory animus. *See Cones*, 199 F.3d at 521. Especially since Rohner made that lateral transfer even though she (allegedly) had previously indicated to Coleman that he would be selected for the position. J.A. 190.

Accordingly, taken as a whole and in the light most favorable to Coleman, the record at this early procedural juncture shows that he came forth with sufficient factual allegations and inferences to require, at a minimum, that he be afforded discovery before summary judgment proceedings.

To be sure, the district court has already made a key finding, which we have summarily affirmed, in the context of Coleman's discrimination claim—that briefing skills were a

"critical job component." *Coleman*, 2015 WL 4751022, at *8. That means that Coleman's retaliation argument must take account of his and Millhench's comparative briefing skills, or offer a theory of retaliation that does not turn on Coleman's comparative qualifications for the position. Notably, while Millhench had some briefing experience, Coleman alleged that she had no production experience. J.A. 151.[8]

Accordingly, the record contains a number of plausible factual disputes pertaining to Coleman's claims of retaliation that could not be resolved on a motion for summary judgment.

Finally, Coleman alleged that he was retaliated against by his supervisor through the issuance of Letters of Counseling and Reprimand. Compl. ¶¶ 54–56. The district court applied the wrong legal standard to Coleman's allegation that those disciplinary actions were retaliatory. *Coleman*, 19 F. Supp. 3d at 134–135. Specifically, the district court asked whether those letters were materially "adverse employment actions." *See Coleman*, 19 F. Supp. 3d at 134; *see also Niskey*, 859 F.3d at 8–9. But to sustain a retaliation claim, the employee need only "demonstrate [that] the 'employer's challenged action would have been material to a reasonable employee,' which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination,'" *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (acknowledging that some disciplinary actions can constitute

---

[8] The district court finding that Coleman was not as qualified as the candidates selected for the position extended only to Destry and Eckersley, not to Millhench. *Coleman*, 2015 WL 4751022, at *7–*8 (defining "Selected Candidates").

adverse retaliatory actions if connected to tangible harm). Coleman's retaliation claim based on the disciplinary letters must therefore be remanded for the district court to apply the correct legal standard.

Accordingly, we reverse the decision of the district court as to Coleman's retaliation claims and remand those claims to the district court for further proceedings consistent with this opinion.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, dissenting: This case is a parable about the importance of reading and following instructions. Believing himself the victim of unlawful discrimination and retaliation, James Coleman filed a formal complaint with DHS's EEO office. In response, that office sent Coleman and his counsel a letter identifying the actions it believed underlay Coleman's retaliation claim. Coleman's counsel was instructed to respond if any actions had been misidentified. He never did. But now, Coleman contends his complaint, in fact, asserts a claim not included in the EEO letter. Unlike my colleagues, I believe his protest comes too late. In addition, my colleagues reinstate two other retaliation claims because they believe the district court "applied the wrong legal standard." Maj. Op. 22. I do not and therefore must dissent.

I.

I begin with the administrative-exhaustion issue. As the majority recounts, Coleman was required to exhaust his administrative remedies before suing under Title VII or the ADEA. *See Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017); 29 C.F.R. § 1614.103(a). As part of the exhaustion process, a prospective plaintiff must file a complaint with the agency that allegedly discriminated against him. *See* 29 C.F.R. § 1614.106(a). That complaint must be "sufficiently precise . . . to describe generally the action(s) or practice(s) that form the basis of the complaint." *Id.* § 1614.106(c). A complainant may also amend his complaint throughout the investigation to include other issues and claims. *Id.* § 1614.106(d).

With his counsel's assistance, Coleman completed a DHS "Individual Complaint of Employment Discrimination" form. The form is a two-page document with twenty-five numbered instructions. It solicits information about the complainant, his employment and the alleged discriminatory actions.

Instruction 15 focuses on the conduct at issue. In pertinent part, it reads:

> 15. A. Describe the action taken against you that you believe was discriminatory.
>
> B. Give the date when the action occurred, and the name of each person responsible for the action.
>
> C. Describe how you were treated differently from other employees, applicants, or members for any of the reasons listed in Item 16.[1]
>
> D. Indicate what harm, if any, came to you in your work situation as a result of this action. (You may, but are not required to, attach extra sheets.)

Joint Appendix (JA) 188. In response, Coleman wrote "see attachment" and appended a three-page narrative with four headings corresponding to instruction 15's four parts.

Coleman's addendum is hardly a model of clarity.[2] In response to instruction 15.A, which directs him to "[d]escribe

---

[1] The listed reasons are "race," "color," "religion," "national origin," "sex," "age," "physical or mental disability," "retaliation/reprisal," "sexual orientation," "parental status" and "protected genetic information." JA 188.

[2] The majority rejoins that "our precedent does not demand a 'model of clarity' from often-*pro se* EEO complainants." Maj. Op. 17. But Coleman had counsel, which fact makes the cited precedent irrelevant. The majority nonetheless persists in its attempt to fold a party represented by counsel into a *pro se* party together with the leniency given the latter, citing *Artis v. Bernanke*, 630 F.3d 1031,

the action . . . you believe was discriminatory," he includes just two paragraphs, only one centering on retaliation.[3]  It reads:

> Additionally, I experienced retaliation after I informed Donald Swain (white-male/over 40), Deputy Executive Secretary, via email on Saturday, December 11, 2010 that I initiated contact with the EEO and was contemplating filing a claim.  Consequently, I was not selected for the Production Supervisor position and subsequently received a letter of counseling on December 30, 2010 and a formal letter of reprimand on January 28, 2011.

*Id.* at 189.  His answer to instruction 15.B, which, as set forth *supra*, tells him to tie the action described in 15.A to the date(s) and the person(s) responsible for the action, is far longer, totaling eleven paragraphs.  Like his response to 15.A, it

---

1034–35 (D.C. Cir. 2011).  But its reliance is plainly misplaced.  There, we addressed the fact-bound question of whether the putative plaintiff class satisfactorily engaged in EEO counseling regarding claims of systematic racial discrimination, *see id.* at 1032, 1035; it had nothing to do with the construction of a *pro se* complaint.  Likewise, *Wilson v. Peña*, 79 F.3d 154, 163–64 (D.C. Cir. 1996), is inapposite as it concluded, in pertinent part, that a Title VII limitations period did not begin to run when the agency misinformed the complainant, represented by counsel, of his time to file suit—again, it had nothing to do with the construction of a complaint, whether drafted with or without counsel.  *See id.* at 163–64.

[3]  The other described an allegedly discriminatory (but, based on chronology, not retaliatory) action taken by his supervisor in not promoting him earlier in 2010 to one of two production supervisor positions because of his deficient "briefing skills."  That position was eventually filled by John Destry.

4

mentions letters of counseling and reprimand (collectively, the disciplinary letters). But it also mentions a host of other events. For example, Coleman describes a "mysterious message" directing him to go to a Washington, D.C. Starbucks where someone affixed an "envelope contain[ing] a 'secret' document" to his vehicle's windshield. *Id.* at 190. Coleman then tells of being "interrogated" about his "scar[ing]" a co-worker by sitting in his vehicle while it idled in his assigned parking space. *Id.* He also describes an "astonish[ing]" email asking him to resume his morning shift team lead duties. *Id.* at 191. Also included in his rambling factual recitation is a brief description[4] of how Millhench was transferred to the production supervisor position which remained vacant after Alan Eckersley turned it down and for which Coleman was rejected because he failed to meet regularly with the "Deputy Associate Executive Secretariat." *Id.* at 189.

Understandably, the EEO sought to clarify the scope of Coleman's complaint in a May 2011 letter to Coleman's lawyer. In pertinent part, it reads:

> [DHS's EEO Office] has carefully reviewed the complaint . . . and the EEO Counselor's Report.

---

[4] Specifically, Coleman says:

> In January Boyden Rohner announced that Kara Millhench was given the Production Supervisor position although she previously implied I would be selected for the position . . . . Kara Millhench informed me that she did not apply for the Production Supervisor position; she stated that Boyden Rohner came to her and asked her if she wanted the Production Supervisor position . . . .

JA 191–92.

Based upon that review and the criteria established by the Equal Employment Opportunity Commission (EEOC) regulations at 29 CFR § 1614.107, I am accepting the following claims for processing:

Your client alleges he has been discriminated against and subjected to harassment and a hostile work environment on the bases of his race (African American), age (DOB [redacted]/61), and reprisal (filing instant complaint). The following are examples of incidents your client provides in support of his claims:

> 1. In June 2010, Complainant's supervisor, Director of Secretary Briefing Staff (DSBS), informed Complainant that his non-selection for the (first) Supervisory Production Specialist position . . . was due to his weak briefing skills;

> 2. In early December 2010, the DSBS informed Complainant that his non-selection for the (second) Supervisory Production Specialist position . . . was due to his failure to greet [sic] the Deputy, Associate Executive Secretariat on a regular basis;

> 3. On December 13, 2010, the DSBS interrogated Complainant regarding a false statement a female co-worker made about Complainant;
>
> 4. On December 30, 2010, the DSBS gave Complainant a letter of counseling;

After contacting the HQ EEO Office on December 11, 2010, your client alleges the following incidents took place in reprisal for his protected EEO activity:

> 5. On January 28, 2011, the DSBS gave Complainant a letter of reprimand.
>
> * * *

If you believe the above accepted claims have not been identified correctly, please notify our office in writing within seven (7) calendar days after your receipt of this letter, specifying why you believe your client's claims were incorrectly identified. If you fail to contact our office, I will conclude that you agree with the claims as stated.

*Id.* at 127–28 (emphasis in original). Despite the letter's notice, Coleman's counsel did not respond. Nor did Coleman ever amend his administrative complaint. *See* 29 C.F.R. § 1614.106(d).

On these facts, I believe Coleman failed to exhaust the Millhench transfer claim. My conclusion flows naturally from our decision in *Hamilton v. Geithner*, 666 F.3d 1344 (D.C. Cir. 2012). There, a federal employee (Hamilton) brought a discrimination suit based on, *inter alia*, his agency's 2002 decision to grant a work detail to another employee. *Id.* at 1348. We noted that, in a follow-up letter to Hamilton, the relevant EEO office identified the claim to be investigated as Hamilton's 2003 non-promotion. *Id.* at 1350. We emphasized the letter told him to notify the office in writing if he "disagree[d] with the claim[.]" *Id.* If he did not respond, the letter said, the office would conclude "that [Hamilton] agree[d] with the claim(s) and [would] proceed with the investigation." *Id.* Hamilton neither responded nor amended his complaint. *Id.* Accordingly, we found his claim unexhausted. *Id.* at 1351.

To me, the lesson is clear. If an EEO letter requests confirmation of a complaint's scope and the complainant does not respond or amend his complaint, only those claims listed in the letter are treated as exhausted. That makes sense. Exhaustion serves important purposes. It "give[s] federal agencies an opportunity to handle matters internally whenever possible" and "impose[s] on employing agencies the opportunity as well as the responsibility to right any wrong that it might have done." *Niskey*, 859 F.3d at 7 (internal quotation marks omitted). Those goals are frustrated if the agency is unsure *what* conduct to investigate. I see nothing unfair in requiring the complainant to dispel any uncertainty. *Cf. Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("[E]xhaustion requirements are designed to deal with parties who do not want to exhaust . . . .").

My colleagues attempt to salvage the transfer claim by distinguishing *Hamilton*. They stress that Hamilton, unlike Coleman, "made no mention" of the unexhausted claim in his

complaint. Maj. Op. 16 (brackets and internal quotation marks omitted). I believe this distinction is without effect. The law demands more from a complaint than *some* reference to the relevant events. *Cf.* 29 C.F.R. § 1614.106(c) (The complaint "must be sufficiently precise . . . to describe generally the action(s) or practice(s) that form the basis of the complaint."). And Coleman's garbled discussion is of little value. His 15.A response makes no reference to the Millhench transfer.[5] Worse for him, it suggests that the Millhench transfer was *not* part of his retaliation claim. Coleman complains that he "was not selected for the Production Supervisor position and *subsequently* received a letter of counseling *on December 30, 2010.*" JA 189 (emphasis added). But Millhench's transfer occurred on January 16, 2011. December 30, 2010 would not be "subsequent[]" to the complained-of action if he were describing the Millhench transfer. Coleman's reference to the Millhench transfer in 15.B hardly clarifies matters, as his answer describes events that plainly could not be considered retaliatory. For example, he describes a February 2, 2011, e-mail from his supervisor "ask[ing] . . . if she could reinstate [him] as the morning shift team lead." *Id.* at 191. This is hardly the stuff of retaliation. And Coleman's complaint confirms as much by identifying January 28, 2011—several days earlier—as the date of the final challenged action, *i.e.*, the reprimand letter.[6]

---

[5] Again, that question asked Coleman to "[d]escribe the action taken against [him] that [he] believe[d] was discriminatory." JA 188.

[6] The majority contends that I "do[] not dispute that the complaint encompassed" "the Millhench transfer issue." Maj. Op. 18. My colleagues therefore believe (apparently) that I regard the acceptance letter as "erasing the *claim*." *Id.* (emphasis added). But that elides the distinction between an event and a claim. Plainly not every event mentioned in a complaint is automatically its own claim.

9

Perhaps aware of the limitations of his complaint, my colleagues contend the EEO letter accepts Coleman's retaliation claim "without any temporal or content limitations." Maj. Op. 17. To reach this conclusion, they read the EEO letter's "plain text" as drawing "a distinction between 'claims' to be processed and 'examples' of evidence to support those claims." *Id.* at 15. In their view, the letter chooses to "describe the discrete acts of retaliation . . . as mere 'examples' of factual incidents that might support Coleman's claim[.]" *Id.* But the majority misreads the EEO letter. Although the EEO letter lists four "examples of incidents [Coleman] provide[d] in support of his claims[,]" JA 127, it identifies just *one* action that Coleman "allege[d] . . . took place in reprisal for his protected EEO activity[,]" that is, the January 28 letter of reprimand. *Id.* at 128. Nowhere does the letter say that one action is simply an "example." Fairly read, the EEO letter does not suggest that

---

So recognizing, the majority emphasizes that "[w]hat matters is that the Millhench transfer is a *complained-of* event." Maj. Op. 18 n.6. But how? Nothing in Coleman's description of the transfer suggests he thought it retaliatory. *See supra* n.4. And why consider only this a "complained-of" event and not Rohner's "astonish[ing]" email or her interrogation of him regarding the parking lot incident? When faced with a complaint of this opacity, an EEO office needs some way to separate the wheat from the chaff. What matters, I submit, is that the administrative steps of a Title VII claim be followed as required by, *inter alia*, our precedent. A sensible solution—one sanctioned by *Hamilton*—is for the EEO office to clarify the complaint's scope. That is what the EEO office did here. But under the majority's reading, such efforts have no effect and, instead, the initial complaint, deficient though it may be, sets the matter in amber. In this case, the amber more accurately resembles sand. If this is indeed the import of our exhaustion precedent, including, specifically, *Hamilton*, exhaustion has become a dead letter.

office acknowledged a reprisal claim based on the Millhench transfer.

Coleman's subsequent actions confirm my view. As the majority notes, *see* Maj. Op. 7–8, Coleman completed a *sworn* EEO declaration in July 2011. The declaration belies the majority's reading of the EEO letter. The declaration's first page identifies "[t]he accepted issue in this complaint" as "[w]hether DHS discriminated against Complainant and subjected him to a hostile work environment on the bases of race . . . , age . . . , and reprisal" based on five enumerated actions.[7] JA 147. The five actions—which are not labeled "examples"—contain no mention of the Millhench transfer.

Accordingly, I would hold Coleman failed to exhaust the Millhench transfer claim. My conclusion is hardly stinting. Coleman had plenty of opportunities to alert the EEO office to his claim. He could have done so when instructed to "[d]escribe the action taken against [him] that [he] believe[d] was [retaliatory]." *Id.* at 188. He could have done so when further instructed to "notify [the EEO] office" "[i]f . . . the . . . accepted claims [were] not identified correctly[.]" *Id.* at 128. He could have done so in his sworn EEO declaration which identified five events—none the Millhench transfer—that underlay his claims. Or he could have amended his complaint during the EEO investigation. *See* 29 C.F.R. § 1614.106(d). Instead, he did nothing. More compelling still, he declared under penalty of perjury that the "accepted issue in [his] complaint" included five challenged actions, none including the Millhench transfer. JA 147. At some point, a party—especially one represented by counsel—must live with his

---

[7] Those five actions mirror the EEO letter's four "examples of incidents" and one act of reprisal.

choices. I believe that moment came and went for Coleman long ago.[8]

## II.

My colleagues also conclude the district court erred in rejecting Coleman's retaliation claim based on the DHS disciplinary letters.[9] In their view, the district court applied the wrong standard because it examined whether those letters were "adverse employment actions" and not whether the "'employer's challenged action . . . well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Maj. Op. 22 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). I see little, if any, inconsistency. "To prove retaliation, the plaintiff generally must establish that he or she suffered . . . a materially adverse action . . . ." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). An action is materially adverse if it would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). In other words, I believe the district court applied the very standard—by necessary implication, at least—that my colleagues suggest it overlooked.

---

[8] The majority tries to equate Coleman's failure to follow instructions with the EEO office's alleged failure to "follow the rules" governing claim dismissals. Maj. Op. 19. The cited rules require the EEO office to, *inter alia*, give notice of and explain partial dismissals. The majority does not explain how that office could be blamed for not explaining dismissal of a claim not made.

[9] Again, those letters were the December 30, 2010, and January 28, 2011, letters of counseling and reprimand, respectively.

12

The majority may fault the district court for referring to an "adverse *employment* action." *Coleman v. Johnson*, 19 F. Supp. 3d 126, 134 (D.D.C. 2014) (emphasis added). Granted, the challenged retaliatory action need not "relate[] to the plaintiff's employment," *Rochon*, 438 F.3d at 1219, and retaliatory adverse action "encompass[es] a broader sweep of actions than those in a pure discrimination claim[,]" *Baloch*, 550 F.3d at 1198 n.4. Nevertheless, I do not think this distinction was lost on the district court. The court determined the disciplinary letters did not "qualify as adverse employment actions . . . *for* either discrimination claims or *retaliation claims*." *Coleman*, 19 F. Supp. 3d at 134 (emphases added). And it based its conclusion on our retaliation precedent. *See id.* (citing, *inter alia*, *Baloch*, 550 F.3d at 1199). That precedent teaches that a letter of counseling or reprimand that provides "job-related constructive criticism" generally does not constitute the "materially adverse action" needed "[t]o prove retaliation" unless it contains "abusive language" or portends further—more tangible—harms. *See Baloch*, 550 F.3d at 1198–99 (internal quotation marks omitted).[10] Neither caveat exists in Coleman's case. Perhaps "adverse employment action" is inartful phrasing.[11] If so, it is a peccadillo we, too, have committed. *E.g.*, *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) ("[A] retaliation plaintiff need only show that she engaged in protected activity, that she suffered an adverse *employment* action, and that there was a

---

[10] Incidentally, the majority—like the district court—relies on *Baloch*. *See* Maj. Op. 22.

[11] I find it noteworthy that my colleagues swallow the camel (bumbling complaint) but choke on the gnat (district court nit).

causal link between the former and the latter." (emphasis added)). But it does not require reversal.

Accordingly, I respectfully dissent.