# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 21-1151**

**September Term, 2022**

FILED ON: MARCH 24, 2023

TEMITOPE OGUNRINU,
          PETITIONER

v.

OFFICE OF THE CHIEF ADMINISTRATIVE HEARING OFFICER, EXECUTIVE OFFICE OF IMMIGRATION REVIEW, U.S. DEPARTMENT OF JUSTICE, ET AL.,
          RESPONDENTS

On Petition for Review of a Final Order
of the Department of Justice

Before: MILLETT, PILLARD, and RAO, *Circuit Judges*.

## J U D G M E N T

This case was considered on the record from the Office of the Chief Administrative Hearing Officer and on the briefs of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the petition for review of the decision of the Office of the Chief Administrative Hearing Officer be **DENIED**.

## I

The anti-discrimination provisions of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324b, forbid employers from discriminating against American citizens on the basis of citizenship status when making hiring decisions. *See id.* § 1324b(a)(1)(B). Employers are also forbidden from requesting unnecessary proof of immigration status, which is known as document abuse, and from retaliating against employees asserting their right to be free from discrimination. *See id.* § 1324b(a)(5)–(6).

Petitioner Temitope Ogunrinu is a dual citizen of the United States and Nigeria and a practicing attorney who appears *pro se*. In 2010, she contacted Law Resources—a legal staffing

1

agency—for employment, and she began receiving communications from them about available projects through an email list. Law Resources relies on attorneys communicating their availability and interest in advertised projects before it staffs them. On September 20, 2018, Ogunrinu emailed Law Resources asking to be staffed on a document review project. That same day, the law firm Arnold & Porter requested contract attorneys from Law Resources to work on a document review project. Arnold & Porter required that the attorneys be sole United States citizens, due to a mistaken belief that dual citizens could not handle documents related to the International Traffic in Arms Regulations ("ITAR").

After informing Ogunrinu of the ITAR project, Law Resources included her on a list of candidates it sent to Arnold & Porter. Arnold & Porter asked Law Resources to confirm that all candidates had exclusively United States citizenship, and Law Resources asked Ogunrinu whether she was solely a United States citizen. LRA–98, 102. When Ogunrinu asked why Law Resources needed that information, Law Resources responded that the question came from Arnold & Porter. LRA 102. Ogunrinu refused to confirm her citizenship, and so Law Resources removed her name from consideration for employment on that project. Ultimately, five attorneys worked on the ITAR project; the highest-paid received $2,208.75. LRA–36; Amended Order on Motions for Summary Decision ("Order") at 6, J.A. 487.

During that same period, Ogunrinu worked on a pre-existing project that she had received from another employment agency, and to which she had already committed before applying for the ITAR project. There, she earned $2,989.20. J.A. 502. Ogunrinu could not have both completed the ITAR project and maintained her existing employment with this other agency because Arnold & Porter forbade its contract attorneys from working simultaneously for other employers. While Ogunrinu kept receiving advertisements regarding job opportunities from Law Resources, she never contacted the agency again.

In early November 2018, Ogunrinu filed a charge with the Immigration and Employee Rights Section of the Department of Justice alleging unlawful citizenship discrimination, document abuse, and retaliation. When a complainant files a charge with the Department of Justice alleging a violation of Section 1324b, the statute authorizes two parallel remedies. First, the government may seek on its own behalf an order from the Office of the Chief Administrative Hearing Officer ("Hearing Office") enjoining future unfair employment practices and imposing civil penalties. *See* 8 U.S.C. § 1324b(d)(1); *id.* § 1324b(g)(2)(B)(iv). If the government chooses not to litigate, charging parties may bring their own claims before the Hearing Office, where the same set of remedies is available. *Id.* § 1324b(d)(2).

In mid-November, following Ogunrinu's filing of a charge with the Immigration and Employee Rights Section, an administrative staff member at Law Resources placed Ogunrinu on an internal "do-not-use" list, without direction by or the knowledge of supervisors. Order at 6, J.A. 487; *see also* Ogunrinu Opening Br. 42. In May 2019, Law Resources' principals learned for the first time that Ogunrinu had been incorrectly placed on the do-not-use list, and they immediately removed her from it. Law Resources Stmnt. Undisputed Facts ¶¶ 64–69, LRA–39– 40. Ogunrinu first learned that she was placed on the list during discussions with the Immigration and Employee Rights Section in the Spring of 2020. Tr. Ogunrinu Dep. 173, LRA–83.

2

Arnold & Porter never placed Ogunrinu on a do-not-use list or any equivalent. Order at 5, J.A. 486. Both Law Resources and Arnold & Porter settled with the federal government the Employee Rights discrimination charge that Ogunrinu had filed, but that settlement preserved Ogunrinu's right to bring an individual complaint for redress. LRA–121–131.

In 2019, Ogunrinu filed an administrative complaint with the Hearing Office against Law Resources and Arnold & Porter, alleging citizenship discrimination, retaliation, and document abuse. Order on Discrimination Claims, Denying Arnold & Porter's Request to Dismiss Retaliation Claim, and Permitting Further Briefing on Document Abuse Claims ("October 2 Order") at 1, J.A. 219. Neither Law Resources nor Arnold & Porter disputed that the record showed they had engaged in unlawful discrimination, and the Chief Administrative Law Judge found them liable on that claim. October 2 Order at 2, J.A. 220. After further discovery, a different Administrative Law Judge within the Hearing Office received briefing on cross-motions for summary decision (which is equivalent to summary judgment) on the remaining issues— retaliation and document abuse. 28 C.F.R. § 68.38(a)–(c). The ALJ granted summary decision to Arnold & Porter and Law Resources on both of those claims. Order at 8, 14–16, J.A. 489, 495– 497. In addition, the ALJ imposed civil penalties payable to the government of $2,000 against both Law Resources and Arnold & Porter for engaging in citizenship discrimination and enjoined future violations. Order at 25, J.A. 506. But the ALJ denied Ogunrinu costs, backpay, front pay, and compensatory damages on her discrimination claim. Order at 19–23, J.A. 500–504.

Ogunrinu appeals all of these adverse decisions, except for the ALJ's grant of summary decision on the document abuse claim. Ogunrinu Opening Br. 3.

Because Section 1324b does not specify the standard of judicial review, *see* 8 U.S.C. § 1324b(i)(1), we apply the arbitrary-and-capricious standard of the Administrative Procedure Act. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Pension Benefit Guarantee Corp.*, 707 F.3d 319, 323 (D.C. Cir. 2013).

## II

Because Ogunrinu's arguments are foreclosed by the record and settled precedent, we deny the petition for review.

## A

Ogunrinu certainly was correct that Law Resources and Arnold & Porter engaged in unlawful discrimination based on her citizenship status, as the ALJ found. October 2 Order at 7, J.A. 225. But the record does not get her past summary judgment on her retaliation claim.

The Hearing Office has adopted the employment discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as the standard for claims under Section 1324b. *See Chellouf v. Inter Am. Univ. of P.R.*, 12 OCAHO no. 1269, at *4–*5 (2016). Because both parties accept that framework, we assume without deciding that it governs Ogunrinu's claim.

3

To state a Title VII retaliation claim, a plaintiff must show that, in response to her efforts to assert her right to be free from discrimination, her employer took a "materially adverse" action—that is, an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Coleman v. Duke*, 867 F.3d 204, 215 (D.C. Cir. 2017) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (formatting modified). A plaintiff may meet that standard using direct or indirect evidence. *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). Ogunrinu did neither.

Ogunrinu argued that Law Resources itself had provided direct evidence of retaliation when it admitted in a brief that, immediately after learning of Ogunrinu's Section 1324b charge, "[a]n administrative staff assistant * * * took it upon herself to place [Ogunrinu] on Law Resources' internal do-not-use list," which, it explained, "is an internal [E]xcel spreadsheet that Law Resources uses to track candidates that should not be staffed on future projects." Law Resources Mot. Bifurcate 3, J.A. 91.

The decision to deny future work to an employee because she filed a civil rights complaint would normally be a textbook case of retaliation. But the unusual facts of this case establish that Ogunrinu's placement on the "do-not-use" list had no adverse impact on her employment. More specifically, the list had no effect on Ogunrinu's search for a new job because it was never shared with another potential employer, and Ogunrinu, who was unaware of the listing, chose on her own never again to apply to work on projects offered by Law Resources. *Cf. Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) ("Where, as here, the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show * * * that [she] applied for an available job[.]") (quotation omitted); *Passer v. American Chem. Soc'y*, 935 F.2d 322, 331 (D.C. Cir. 1991) ("[E]fforts by an employer to scuttle a former employee's search for a new job * * * can constitute illegal retaliation[.]").

Nor did Law Resources wield her placement on the list as a threat that might intimidate a would-be complainant since Ogunrinu was unaware of the listing until well after she had both filed the complaint and independently abandoned any interest in a job with Law Resources. *Cf. Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 178 (1st Cir. 2015) (threatened job loss is sufficient for retaliation claim). On this record, Ogunrinu has not shown how a reasonable complainant's decision to bring a charge would be affected by inclusion on a list (i) that had no effect on her job search, nor her employment more broadly, and (ii) of which neither she nor anyone in a decision-making role at her prospective employer was aware. On that basis, the ALJ properly rejected Ogunrinu's direct-evidence theory.[1]

---

[1] Apart from concluding that Law Resources had established "a very different meaning for Complainant's presence on the list," *see* Order at 10, J.A. 491, the ALJ also quibbled with Ogunrinu's citations to the opposing party's brief, rather than to the record, as evidence of an admission. The ALJ's view of admissions is certainly questionable. At least one circuit has held that "an 'admission' for purposes of summary judgment 'includes anything which is in practical fact an admission, including statements made in a brief presented to the district court.'" *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 989 (7th Cir. 2000)). But we need not pass on the correctness of that rule because the focus on the missing factual links in Ogunrinu's argument fully

As for Arnold & Porter, Ogunrinu never argued that the law firm had anything to do with operating the list, so Ogunrinu's direct-evidence theory addressed Law Resources alone. Ogunrinu Mot. Summ. Decision at 6, J.A. 323.

Absent direct evidence, Ogunrinu had to prove that (1) she engaged in conduct protected under Section 1324b; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected conduct and the adverse action. *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019). The burden would then shift to the respondents to articulate a non-retaliatory reason for their actions. *Hernandez v. Pritzker*, 741 F.3d 129, 133 (D.C. Cir. 2013). Unlike her direct-evidence theory, which focused on her complaint to the Department of Justice and her resulting placement on the do-not-use list, Ogunrinu's indirect-evidence theory focused instead on Arnold & Porter's and Law Resources' alleged retaliation against her for refusing to disclose her dual citizenship when they failed to hire her for the ITAR project (in the case of Law Resources) and by interfering with her ability to find work elsewhere (in the case of both Arnold & Porter and Law Resources). *See* Ogunrinu Mot. Summ. Decision 12–14, J.A. 329–331.

The ALJ correctly determined that Ogunrinu failed to substantiate her allegation that Arnold & Porter and Law Resources had failed to hire her for other jobs or interfered with her search for employment with other firms. Ogunrinu never expressed interest in any of the subsequent jobs that Law Resources advertised to her, Order at 13–14, J.A. 494–495, and she never applied for another job with Arnold & Porter. *See* Order at 15, J.A. 496. Nor did she identify any interference with employment opportunities at other firms or staffing agencies. Order at 14–15, J.A. 495–496.

That leaves only the allegation that Law Resources excluded Ogunrinu from the ITAR project to retaliate against her refusal to disclose her citizenship. The ALJ correctly held that Ogunrinu established a *prima facie* case of retaliation on that basis. Law Resources' refusal to hire her was materially adverse, and it came after her refusal to disclose her dual citizenship, which is protected oppositional activity of which Law Resources was fully aware. Order at 13, 16, J.A. 494, 497. Further, while the ALJ made no definitive finding on the third prong, the temporal proximity between Ogunrinu's emails and her rejection from the ITAR project would allow a reasonable factfinder to infer Law Resources' retaliatory motive in not staffing her on the ITAR job. *See Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) (temporal proximity can be sufficient).

At that point, the burden shifted to Law Resources to provide a non-retaliatory reason for its exclusion of Ogunrinu from the ITAR project. *See Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016). Law Resources discharged that burden at the summary judgment stage by showing that, while its action was discriminatory, it was not retaliatory. That is because, given

---

supports the ALJ's decision. Nor need we consider Ogunrinu's argument, presented here for the first time, that the ALJ should have analyzed her inclusion on the do-not-use list under the indirect evidence test. *See* Ogunrinu Opening Br. 40. As we have explained, she failed to demonstrate on this record that her inclusion on that list was an adverse employment action.

Arnold & Porter's specific sole-citizen mandate, Law Resources would have excluded any dual citizen from the project irrespective of their opposition to or acquiescence in the request for citizenship information. Order at 18, J.A. 499. In other words, even if Ogunrinu had not attempted to exercise her right to be free of discrimination based on citizenship, she still would have been excluded from the ITAR project due to Arnold & Porter's erroneous assumption that she was legally ineligible to work on the project. Accordingly, Law Resources would have removed her from the project whether or not she opposed the citizenship inquiry. Ogunrinu neither contests that explanation nor provides any evidence that her protected activity instead was the actual cause of her exclusion, making summary judgment in favor of Law Resources on the retaliation claim proper. Order at 18, J.A. 499; *see Allen v. Johnson*, 795 F.3d 34, 46 (D.C. Cir. 2015) (summary judgment proper if employee fails to rebut the employer's non-retaliatory reasons).

Because Ogunrinu failed to carry her summary judgment burden to demonstrate retaliation either by direct or indirect evidence, the ALJ's grant of summary judgment to Law Resources and to Arnold & Porter on that claim was appropriate.

## B

The ALJ also reasonably refused to take judicial notice of two alleged admissions of discrimination by Law Resources and Arnold & Porter and of their settlement agreement with the government. *See* Ogunrinu Opening Br. 27–29. Having already found that both Law Resources and Arnold & Porter had engaged in unlawful discrimination, there was no need to pile on more evidence of discrimination. J.A. 225. And none of the evidence for which Ogunrinu seeks judicial notice bears on the evidentiary gaps in the only legal issue in dispute before the Hearing Office: her retaliation claim.

Similarly, Ogunrinu's claim that Arnold & Porter and Law Resources are joint employers is irrelevant to their liability since neither of them was shown to have engaged in unlawful retaliation.

## III

Ogunrinu separately challenges the ALJ's decision not to award costs, front pay, back pay, or damages on her discrimination claim. Those challenges, too, are foreclosed by the law and the record.

First, on the subject of costs, Section 1324b(h) permits the Hearing Office to award "a reasonable attorney's fee, if the losing party's argument is without reasonable foundation in law and fact." 8 U.S.C. § 1324b(h). That statute, though, says nothing about incidental litigation costs like filing fees. Statutes authorizing costs generally do not impliedly authorize attorney's fees, and vice versa. *Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 373–374 (2019); *see also Breda v. Kindred Braintree Hosp., LLC*, 11 OCAHO no. 1225, at *4 (Aug. 26, 2014) ("Absent any statutory or regulatory authority for an award of costs, each party must be responsible for its own incidental

6

expenses.").  This rule forecloses the award of incidental costs here.[2]

In any case, Ogunrinu's argument that a reasonable attorney's fee includes other incidental expenses fails at the threshold because longstanding Hearing Office precedent prohibits awarding attorney's fees to *pro se* attorney litigants.  *See Ojeda-Ojeda v. Booth Farms, L.P.*, 9 OCAHO no. 1121, at *2 (Sept. 26, 2006) (citing *Kay v. Ehrler*, 499 U.S. 432 (1991)); *see also Kooritzky v. Herman*, 178 F.3d 1315, 1319 (D.C. Cir. 1999).  Ogunrinu does not challenge that precedent here.

To be sure, during the discovery phase in this case, an ALJ explained that Ogunrinu did not need to hire an expert to assess her costs because she could "provide receipts" to substantiate any later request for costs.  Order of Oct. 15 at 18, J.A. 173.  But that passing statement spoke only to how costs could be proved if she ever became eligible for such relief, which she did not.

Second, on the denial of back pay, the statute requires the Hearing Office to reduce back pay by any "[i]nterim earnings."  8 U.S.C. § 1324b(g)(2)(C).  Ogunrinu earned more during the period of the ITAR project than the highest-paid employee staffed on that project, and she repeatedly represented that she intended to work exclusively on the ITAR project had she been chosen for it and so could not have simultaneously earned salaries for both projects.  Order at 21, J.A. 502; Tr. Ogunrinu Dep. 73–74, LRA–80.  Because her actual earnings more than made up financially for being excluded from the ITAR project, she was entitled to no additional back pay award.

Ogunrinu argues that she is entitled to back pay at the rate for which Arnold & Porter or Law Resources would have billed her time to their clients.  But back pay awards compensate for the value of a job to the employee, not what it was worth to the employer.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).  For that same reason, the ALJ acted reasonably in denying Ogunrinu extra time to undertake discovery into Arnold & Porter's billing rate to clients.  *See* Order on Sept. 2020 Mots. at 17–19, J.A. 172–174.  That evidence is irrelevant to any lost earnings.

Third, as for front pay, that form of relief only substitutes for reinstatement to a job. *Barbour v. Merrill*, 48 F.3d 1270, 1279 (D.C. Cir. 1995).  The ITAR project "lasted for eight days only and did not lead to any subsequent document review project[,]" so reinstatement was not an option.  LRA–36.  Ogunrinu never sought any other employment from Arnold & Porter, *see* J.A. 312, or from Law Resources, LRA–62; nor did she identify available jobs for which she requested reinstatement but was refused.  Instead, Ogunrinu grounded her front pay claim in "reduced marketability resulting [from] damaged reputation."  Complainant's Supp. Resps. Pursuant to Ct.'s Sept. 10, 2020 Order on Law Resources 1st Req. for Prod. Docs. At 3, LRA–135.  But she provided none of the "essential data"—no summary judgment evidence—that would allow a reasonable fact finder to conclude that she suffered any reputational harm whatsoever.  *Barbour*, 48 F.3d at 1279 (quotation omitted).

Finally, Ogunrinu failed to show that she was entitled to compensatory damages.  Even

---

[2]  For the same reason, we need not pass on whether the value of lost wages might count as a cost of litigation.  *See* Ogunrinu Reply Br. 24.

assuming the Hearing Office has the power to award compensatory damages, *but see Breda*, 11 OCAHO no. 1225 at *5, Ogunrinu offered no evidence of a qualifying individual injury. *See* Ogunrinu Mot. Summ. Decision at 31, J.A. 348; Order at 19, J.A. 500. She focused only on what she characterized as the "deliberate, reckless, depraved and intentional" misconduct by Law Resources and Arnold & Porter. Ogunrinu Mot. Summ. Decision at 31, J.A. 348. Such evidence would be relevant to a claim for punitive damages, which Ogunrinu repeatedly disclaimed seeking, but it does not show an individualized compensable injury. Complainant's Reply Opp. Arnold & Porter's Mot. Summ. Decision at 25, J.A. 396; Complainant's Reply Opp. Law Resources' Mot. Summ. Decision at 47, J.A. 453.

## IV

Ogunrinu's equal protection challenge to the limited remedies available to successful complainants likewise fails. Ogunrinu argues that citizenship-based discrimination should not be punished less severely than other kinds of discrimination. Whatever the merits of that argument as a matter of policy for Congress, there is no constitutional problem with Congress selecting different remedies for different kinds of injuries. *See, e.g.*, *Kennedy v. Whitehurst*, 690 F.2d 951, 965–966 (D.C. Cir. 1982) (comparing the availability of attorney's fees under the Age Discrimination in Employment Act and under Title VII).

## V

Finally, Ogunrinu's procedural challenges do not succeed.

First, the ALJ's failure to issue its decision within 60 days of the completion of briefing as required by regulation, 28 C.F.R. § 68.52(b), does not render the ruling void. A statutory "provision that the Government 'shall' act within a specified time" generally does not deprive the agency of authority to act later unless Congress specifically says so. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003). Section 1324b says nothing like that.

Second, Ogunrinu complains that the ALJ's order that Law Resources and Arnold & Porter "cease and desist [their] unfair immigration-related employment practices," Order at 24, J.A. 505, is "unenforceable" because it is too generic, Ogunrinu Opening Br. 32. But it matches the wording she proposed. *See* J.A. 349–50; LRA–82; *see also South Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 891 (D.C. Cir. 2006) ("It is settled law that a party that presents a winning opinion before the agency cannot reverse its position before this court."). Further, since the Office's injunctive power is limited to "immigration-related" practices, it could not have granted Ogunrinu's request to enjoin Law Resources' or Arnold & Porter's alleged violations of the District of Columbia's ethical rules on the practice of law. *See* 8 U.S.C. § 1324b(g)(2)(A).

Third, Ogunrinu's complaint about alleged procedural faults in Law Resources' and Arnold & Porter's written deposition questions fails to grapple with the ALJ's reasoned ruling that the questions were "necessitated by [Ogunrinu's] tardy service of discovery responses." J.A. 227. In any event, Ogunrinu did not object to that ruling at the time, and so cannot challenge that ruling for the first time here. *See* J.A. 227–228; *Holcomb*, 433 F.3d at 903.

* * * * *

For the foregoing reasons, the petition for review is denied.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.   The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc.   *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk

9